HOBBS, Administrator, Appellant, vs. NELSON, Respondent.

*September 25—November 17, 1925.*

*Automobiles: Negligence: Collision with bicycle rider: Special verdict: Inconsistent answers: Trial: Five-sixths jury law: Unit required to arrive at verdict.*

1. In an action for death sustained in a collision of defendant's automobile with a bicyclist when the latter was traveling in a northerly and defendant in a southerly direction, a finding of the jury on the question of defendant's negligence and its finding as to the negligence of the bicyclist are *held* inconsistent with each other, where the practical effect of the answers to the questions was to place the bicyclist and the automobile west of the center line of the driveway when considering the question of defendant's negligence, and east of the center of such line when considering the negligence of the bicyclist. pp. 113, 114.

2. Where the jury found that plaintiff's theory that the collision occurred east of the center line of the highway was true, and defendant's theory that it occurred on the west of the center line of the highway was untrue, but also found that defendant's act in driving on the wrong side of the driveway was not a proximate cause of the collision, a judgment for defendant could not be sustained where, under the evidence, defendant's act in so driving must necessarily have had some material contributing effect in causing the collision. p. 114.

3. Sec. 2857, Stats., and the recent amendment to sec. 5, art. I, of the constitution, requiring a unit of but ten jurors in place of the former unit of twelve jurors upon all questions of a special verdict, requires the same ten individual jurors on all questions. p. 115.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

The plaintiff was the father of one Vincent Hobbs, who died August 18, 1924, from a fractured skull received in a collision between the bicycle on which he was riding and defendant's Ford sedan on August 14, 1924, at about 5:20 p. m. The father was appointed administrator of the estate and the complaint alleged two causes of action: first, for the loss to the parents by reason of the death; and second, for the pain and suffering of the boy intermediate the accident and the death, the first of such alone being involved on this appeal.

Deceased, a strong, healthy boy just under nineteen years of age, was riding his bicycle northerly and down hill on Kinzie avenue in the city of Racine towards and across Race street and its extension, which crossed Kinzie avenue almost at right angles. A bridge with an eighteen-foot-wide driveway led in a northerly direction from Kinzie avenue to one of the city parks. The defendant with members of his family in a Ford sedan was coming from the park southerly toward Race street. The collision occurred on the south end of the bridge. The boy was hurled to the pavement, causing the fatal fracture.

The nature of the issues submitted to the jury in the special verdict together with the answers as found by the jury were substantially as follows: (Except as otherwise indicated the respective answers were by all of the twelve jurors.)

(1) Was defendant at the time of the collision to the left or east of the center of the bridge? *A.* Yes.

(2) Was the fact so found in question (1) a proximate cause of the collision? *A.* No, by 10 (Burgess and Stehlik voting Yes).

(3) Was defendant's automobile in motion at the time? *A.* Yes.

(4) If found to have been in motion, at what rate of speed? *A.* Slow.

(5) Was such, under the circumstances, an excessive and dangerous speed? *A.* No.

(6) Was such rate of speed a proximate cause?  *A.* No.

(7) Did defendant fail to keep a proper lookout?  *A.* No.

(8) If question (7) was answered Yes, then was defendant's failure as to lookout a proximate cause.  *A.* No.

(9) Was defendant's failure to sound a warning of his approach (a conceded fact) a want of ordinary care? *A.* Yes, by 11 (foreman Peterson voting No).

(10) Was such failure to sound warning a proximate cause?  *A.* No.

(11) Did defendant at the time have his automobile under proper control?  *A.* Yes.

(12) If question (11) was answered No, then was such a failure a proximate cause?  *A.* No.

(13) Did any want of ordinary care on the part of Vincent Hobbs proximately contribute to cause the collision? *A.* Yes, by 10 (jurors Tompach and Mehren voting No).

(14) Did Vincent Hobbs recover consciousness after the collision?  *A.* No.

(15) Related to the compensation for the pain and suffering of Vincent Hobbs, and answered No.

(16) What is reasonable compensation for the pecuniary loss to the parents because of the death of Vincent Hobbs? *A.* $1,000, by 11 (foreman Peterson voting for $500).

Upon the return of the verdict and the poll of the jurors disclosing the result as to their answers as above indicated, the plaintiff moved that the verdict be not received for the reason that the same ten jurors had not agreed in their answers to all of the questions of the special verdict.  This motion was overruled and the verdict accepted.  Thereafter, upon respective motions by the parties, including one by plaintiff for a new trial, the trial court directed judgment in favor of the defendant dismissing the complaint upon the merits and filed his written decision upon such motions, saying, among other things, as follows:

"I think it is not necessary that it shall be 'the same ten or eleven jurors' who agree upon the answers to questions upon which the jurors are not unanimous, but that when at least ten of the jurors agree upon the answer to a question

that question is answered. And when at least ten of the jurors agree upon the verdict as a whole it is a verdict. I think the view that it must be the same ten or eleven would lead to unnecessary and unjustifiable confusion and difficulty in trials, that such was not the legislative intention, is not the requirement of the constitution or statute, and my conviction upon that subject leads me to respectfully decline to adopt that view."

From the judgment thereupon entered plaintiff has appealed.

For the appellant there was a brief by *Whaley, Erikson & Paulsen* of Racine, and oral argument by *Martin R. Paulsen* and *Vilas H. Whaley*.

For the respondent there was a brief by *Simmons, Walker & Wratten*, and oral argument by *Carroll R. Heft* and *John B. Simmons*, all of Racine.

ESCHWEILER, J. Upon the evidence in this case we are of the opinion that the special verdict of the jury was so inconsistent and contradictory that no judgment could properly be entered upon the same in favor of either party and that plaintiff's motion for a new trial should for that reason have been granted.

It is undisputed that as Vincent Hobbs was approaching the bridge from the south he was riding down Kinzie avenue on the east side thereof heading towards and entering on the bridge east of the center of its driveway.

Defendant's testimony was to the effect that he came from the north onto the bridge and proceeded near the west curb of the eighteen-foot driveway at not to exceed ten miles per hour and following another automobile; that as defendant neared the south end of the bridge, at which end it is undisputed the collision occurred, he was still close to the west curb, and then first saw the deceased about twenty feet away apparently coming from behind an automobile and approaching the defendant by turning northeasterly,

coming into collision with the left front wheel or fender, the bicycle being thrown up against the windshield of the automobile and the boy being thrown to the pavement. Defendant further testified that immediately after the collision he brought his automobile to a stop, and the boy's body was then lying right at defendant's left wheel with his head and feet within a foot of the car. After stopping a moment defendant ran his automobile on to the southwest corner of Race street and Kinzie avenue and came back to the point where the boy lay and assisted in taking him to the hospital. ·

One of plaintiff's witnesses, who was standing at the southwest corner of Kinzie avenue and Race street at the time, gave testimony from which the conclusion might properly be drawn by the jury that the collision occurred east of the center of the bridge driveway. Several of the witnesses, including one called by the defendant, testified that after the collision the boy lay within two or three feet of the east curb of the driveway.

Upon this conflict in the testimony there is ample support for the conclusion reached by the unanimous vote of the jury on the first question that the collision took place east of the center of the driveway. This necessarily determined, therefore, that as the two vehicles approached each other on the bridge driveway the boy was observing the law of the road as to passing vehicles and that the defendant was committing a breach of such law.

It was well within the province of the jury to reach the conclusion that they did as found by their answer to this first question. The defendant is positive that the boy's body lay along the east side of his automobile immediately after the collision and at a distance not to exceed one foot. If, therefore, as testified to by other witnesses, the boy's body was within two or three feet of the east curb, defendant's automobile must have been, at the time of the collision, well to the east of the center of the eighteen-foot driveway. The

Hobbs v. Nelson, 188 Wis. 108.

jury might well have considered from defendant's own testimony as to his having followed, at greatly reduced speed, an automobile along the narrow driveway on the bridge, that he might have turned to the east as he approached its southern end in order to drive ahead of the other automobile, and for that reason have crossed to the east of the center line and thereby come into the pathway of the boy who was coming on his proper side of the highway and out of the sight of the defendant by reason of the other automobile.

Such unanimous finding of the jury on the first question so fixing the place of collision east of the center of the driveway is contradictory of or at least inconsistent with the only theory upon which the answer of ten jurors to the thirteenth question, viz. that there was contributory negligence by the boy, can be supported; for the boy's negligence, if any, was in getting over onto the west half of the bridge and into defendant's rightful path, as defendant's testimony tended to prove the boy did. The defendant had the burden of proving the contributory negligence of the boy, and no other element or ground for claiming such contributory negligence is or can well be asserted than that the boy rode over the center line and into defendant's path. Under all the evidence the boy and the bicycle were, at all times immediately preceding and at the collision, to the east of defendant's automobile, for the undisputed point of contact was with the left or east front wheel or fender. Therefore, if at the time of the collision defendant's left front wheel was east of the center, as the jury's answer to the first question determined it was, then defendant was in territory which the law of the road gave to the boy; on the other hand, if defendant's car was, as he testified, at all times west of the center, then the boy was on forbidden ground when the collision occurred. The practical effect of the jury's answers to the first and thirteenth questions is to place the boy and the automobile west of the center when

considering the question of defendant's negligence and east of the center when considering the boy's negligence.

The one finding necessarily destroys the value of the other.

There is another reason why the verdict should have been set aside and a new trial granted. Having found by their answer to the first question that the plaintiff's theory as to where the collision occurred was true and that of the defendant in that regard necessarily incorrect, we can find no reasonable explanation of how the ten jurors could have arrived at their answer to the second question, viz. that the fact that defendant was on the wrong side of the driveway was not a proximate cause of the collision. While it is true that a violation of the law of the road is not necessarily of itself a proximate cause of an injury occurring at the time and place of such violation, yet under the facts as here presented, if the defendant crowded over into the territory properly occupied by the boy on the bicycle, such action by the defendant must necessarily have had some material contributing effect in causing the collision.

The conclusion thus reached makes it unnecessary to pass upon other questions presented other than to say that the view suggested by the trial court in that part of his decision quoted in the foregoing statement of facts as to the effect of the recent constitutional amendment and statute relating to juries is incorrect.

This subject of the constitutional amendment changing the requirement of the unanimous verdict of the common-law jury in civil cases of twelve men to one whereby a five-sixths vote of such jury may determine the issues, was presented and fully considered and discussed in *Dick v. Heisler,* 184 Wis. 77, 84 *et seq.,* 198 N. W. 734, and in *Stevens v. Montfort State Bank,* 183 Wis. 621, 625, 198 N. W. 600. What was said in those cases was repeated in *Kosak v. Boyce,* 185 Wis. 513, 523, 201 N. W. 757, and again in *Bentson v. Brown,* 186 Wis. 629, 637, 203 N. W. 380, and

all are to the effect that it is necessary for the same ten jurors to agree upon their answers to each and every question of a special verdict.

Under the law prior to the constitutional amendment the failure of all of the twelve jurors to agree as a unit on a general verdict, or on all questions of a special verdict, resulted in an imperfect, defective verdict or a disagreement. The amendment and the statute have changed that rule so that now, instead of a unit of twelve jurors, it is necessary that there shall be a unit of only ten jurors. But it must be the same ten individual jurors in order to constitute the new unit required under the amendment. To permit one set of ten to answer one essential question in a verdict, and another set of ten another, and so on, would make a much more substantial encroachment upon the common-law jury of twelve than can be held to be effected by the amendment and the statute, as we have heretofore repeatedly stated.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant the plaintiff's motion for a new trial.