STYLOW, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & TRANSPORT COMPANY, Appellant.

*September 17—October 13, 1942.*

212

For the appellant there were briefs by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

For the respondent there was a brief by *George Barrock* and *John L. Newman,* both of Milwaukee, and oral argument by *Mr. Newman.*

WICKHEM, J. The first question upon this appeal is whether the jury's verdict is sustained by the evidence. This requires a brief review of the facts.

The accident occurred on February 25, 1939, at 11:40 p. m. Plaintiff was driving his car north on Sixty-Third street in the city of Milwaukee. Defendant's bus was proceeding east on National avenue. The intersection of Sixty-Third street and National avenue forms a "T" or closed intersection. Sixty-Third street does not continue north of National avenue. Plaintiff, according to testimony which the jury was entitled

to believe, stopped at National avenue, and then proceeded at a slow rate of speed into the intersection with the intention of making a left turn and proceeding west on National avenue. His automobile was struck upon its left side by the left corner of the bus, leaving marks indicating that plaintiff had commenced or partially completed his turn onto National avenue. The bus and plaintiff's car ended up on the north side of National avenue and in the vicinity of the west end of the intersection.

The intersection offered some traffic problems for several reasons. The intersecting streets do not meet at right angles. The angle from south to west between South Sixty-Third street and West National avenue is fifty-nine degrees and seventeen minutes. Thus, the angle to plaintiff's left was acute, and this, together with the fact that a store was built up to the sidewalk on the southwest corner rendered effective lookout somewhat difficult. Further than this, cars were parked to the west of the intersection on the south and north curbs of National avenue.

Defendant claims that plaintiff was negligent as a matter of law, (1) in failing to keep proper lookout; (2) in failing to make adequate calculations of his ability to pass in safety; (3) in making a left turn without giving a signal of his intention to make such a turn; (4) in making a left turn across the path of the bus without affording a reasonable opportunity to its operator to avoid the collision; (5) in failing to yield the right of way to the bus or to take any precautions for his own safety.

We are of the opinion that there was a jury question as to plaintiff's negligence. Plaintiff testified that he was traveling about five miles an hour while making the turn. The bus driver himself testified that plaintiff's speed was about eight miles an hour. With respect to lookout, the corner offered, as hereinbefore indicated, unusual difficulties as to lookout, but plaintiff indicates that when the front of his automobile was in the intersection he saw yellow lights one hundred to

one hundred fifty feet to the west and concluded that he had ample time to get to the center of the street and make his turn. He claims that he was compelled to make the turn because the street ended, and that he could not get any closer to the north curb of National avenue because of cars parked along that curb. He testified that he looked, kept looking, and saw what was there to see. A jury was entitled to believe that he had fully discharged his duty in this respect.

In respect of management and control, the charge is that plaintiff kept going after observing the bus, and made no attempt to turn out to avoid it. What has been heretofore said covers this point. He saw the bus, thought he had time to get clear of it, and in fact, got almost to the north curb before he was hit. There is no evidence that would compel the jury to conclude that an increase in speed would have been sound management or would have made any change in the outcome.

In respect of right of way, there is evidence from which the jury could conclude that plaintiff entered the intersection first after stopping for the arterial. It is claimed by defendant that plaintiff violated sec. 85.18 (5), Stats., which permits a left turn within an intersection "across the path of any vehicle approaching from the opposite direction" only after affording a reasonable opportunity to the operator of such vehicle to avoid a collision. This section, of course, has no application, as it applies only to movements to the left at an intersection across the path of a car coming in the opposite direction.

It is next contended that there was plainly a violation by plaintiff of sec. 85.18 (1), Stats., which provides in substance that the driver of a vehicle approaching, but not having entered an intersection, shall yield the right of way to a vehicle within such intersection, and turning therein to the left and across the line of travel of such first-mentioned vehicle; provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn. This section simply conditions the duty of the bus driver. There is no evi-

dence as to whether plaintiff made a plainly visible signal, or if he did, as to when he made it. It may be that under these conditions, a finding that the bus driver failed to yield the right of way should have been set aside. The application of this section does not of itself convict plaintiff of a negligent failure to yield the right of way. The most that could be asserted is that the issue of right of way is out of the case. See *Hansen v. Storandt,* 231 Wis. 63, 285 N. W. 370; *Grasser v. Anderson,* 224 Wis. 654, 273 N. W. 63. Since there were jury questions as to other items of negligence charged against defendant, and no contributory negligence established as a matter of law, the result would not be changed by a holding that defendant did not negligently fail to yield the right of way. The findings that defendant's bus operator was negligent are supported by the evidence. There is evidence that the bus driver was traveling thirty-five or forty miles an hour in the middle of the block between Sixty-Third and Sixty-Fourth streets; that he was traveling twenty miles an hour until he was within fifteen feet of the crosswalk; that his speed thereafter was at least fifteen miles an hour. Since this was a blind intersection, the jury was entitled to believe that he was traveling at such a rate of speed that he could not stop within half the distance within which he was able to see approaching traffic 'from Sixty-Third street, and that he was operating in violation of sec. 85.40 (4), Stats.

The question of lookout is not so clear. There is testimony from which it appears probable that he saw plaintiff's car as soon as it was visible, and that the difficulty was that he was going too fast to bring his bus under control. The same comment is true of management and control. The jury could conclude upon the evidence that he did not have the bus under such control that he could take effective steps to avoid collision with a car entering the intersection at this obstructed corner.

It is not impossible that a closer analysis would disclose the cause of the collision to have been the speed of the bus, but we shall not attempt such an analysis since in any event there was causal negligence on the part of defendant, and comparative negligence is not involved here.

The next contention is that the award of $3,000 damages for personal injury is excessive. Since for reasons hereinafter to be discussed, there must be a new trial, we shall merely state summarily that while the award was certainly generous, it was not so high as to warrant setting aside the verdict upon this ground.

We now come to a defect in the verdict which compels us to order a new trial. In its conclusion that defendant was negligent in the several respects submitted, and that these items of negligence were causes of the collision, the jury was unanimous. In respect of plaintiff's contributory negligence, the jury was unanimous as to all items but "lookout." There were two dissenters to the conclusion that plaintiff was not guilty of negligent lookout. In respect of the award of $3,000 for personal injury, pain and suffering, there was a dissenting vote by a juror other than the two who dissented upon the lookout question. Thus, the same ten jurors did not agree as to negligence, contributory negligence, and damages, and under the rule in *Biersach v. Wechselberg*, 206 Wis. 113, 238 N. W. 905, the verdict is fatally defective. The trial court took the position that it could not say upon the record whether the dissenting juror on the award of damages dissented because the damages were excessive or inadequate, and hence, that the juror might have agreed that at least $3,000 be paid to plaintiff. The argument is ingenious, but we cannot assent to it. The mental processes of the dissenter upon the damage question cannot be discovered, except by the process of guess, once we depart from the normal inference that a juror dissenting on the award of damages does not

think that the plaintiff should have the amount which the rest of the jurors have awarded him. The vote must be treated as dissenting from the award. In view of this, the rule of the *Biersach Case* governs. That was a personal-injury case, and a special verdict was submitted calling for findings as to defendants' negligence, plaintiffs' contributory negligence, and an assessment of damages. The jury found that defendants were negligent in the respects submitted, that their negligence was a cause of the injury, that plaintiffs were free of contributory negligence, and assessed the damages. One juror dissented from every finding of the verdict. A second juror dissented in respect of one item of defendants' negligence, and as to the cause question attached to that answer. A third juror dissented from the finding which exonerated the plaintiffs from the charge of contributory negligence. A fourth juror dissented upon the damage question. This verdict was held to be fatally defective for the reason that where there is evidence to go to the jury upon the question of contributory negligence, the same ten jurors must agree upon all questions necessary to sustain the judgment, including that of contributory negligence. The plaintiff in that case relied upon the case of *Will v. Chicago, M. & St. P. R. Co.* 191 Wis. 247, 254, 210 N. W. 717. The *Will Case* involved personal injury, and there was a dissent to the questions involving defendant's liability and a dissent by different jurors to a finding of contributory negligence on the part of plaintiff. The court in the *Will Case* withdrew a statement in *Hobbs v. Nelson,* 188 Wis. 108, 205 N. W. 918, to the effect that "it is necessary for the same ten jurors to agree upon their answers to each and every question of a special verdict," and held that the finding of contributory negligence disposed of the litigation, rendered immaterial findings as to defendant's negligence, and entitled defendant to judgment upon the verdict. For this reason the earlier statement that there must be identity of dissenters as to all the questions was held

not to be accurate. The court said: "In other words, if ten jurors are agreed that a defendant was negligent as to some particular duty and also that such negligence was a proximate cause of the injury and as to the amount of plaintiff's damages, that is sufficient to make a good verdict or finding against the defendant in that regard, although such ten jurors may not be the same ten that are in accord on other questions." If the quotation from the *Will Case* be taken literally, it gives color to plaintiff's claim that the verdict here is valid, but in distinguishing the *Will Case,* the *Biersach Case* expressly held that ten jurors must not only agree that defendant was causally negligent, and as to the amount of damages, but the same ten must agree in exonerating plaintiff from contributory negligence. The *Biersach Case* points out that the important circumstance in the *Will Case* was that plaintiff was found guilty of contributory negligence, and under the law as it was then, such a finding disposed of the case adversely to the plaintiff and made all other findings immaterial.

The rule of these cases requires reversal of the judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant a new trial.