HAASE and wife, Respondents, vs. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Appellant. [Case No. 159.]

LEMKE, Special Administratrix, Appellant, vs. HAASE, Respondent. [Case No. 154.]

LEMKE, Appellant, vs. HAASE, Respondent. [Case No. 153.]

*April 8—May 13, 1947.*

423

424

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys for the Employers Mutual Liability Insurance Company, and *Edward H. Borgelt* and *Richard S. Gibbs* of counsel, and *Rheingans & Ketterer,* attorneys for Anna Lemke, and *Oliver Rheingans* of counsel, all of Milwaukee, and oral argument by *Mr. Gibbs* and *Mr. Rheingans.*

For the respondents there was a brief by *Gold & McCann, Michael Levin,* and *Bernard G. Wozniak,* and oral argument by *Mr. Richard A. McDermott* and *Mr. Wozniak,* all of Milwaukee.

FRITZ, J.   The collision involved herein occurred at 10 a. m. on February 13, 1944, in the town of Greenfield, Milwaukee

county, in the intersection of South Ninety-Second street and West Oklahoma avenue, an arterial highway. There were "Stop" signs to control traffic approaching from either the north or south on Ninety-Second street. The front of an automobile operated by Fred Lemke, traveling westward on Oklahoma avenue, struck the middle of the right side of an automobile which Andrew C. Haase was driving northward on Ninety-Second street. In the area which was between the approaching cars to the south of Oklahoma avenue and to the east of Ninety-Second street, there was no obstruction of vision so that Lemke, traveling westward on Oklahoma avenue toward its intersection with Ninety-Second street, had a clear and unobstructed view of the intersection and also along Ninety-Second street for at least three hundred thirty-two feet south of Oklahoma avenue while he was approaching the intersection from more than eight hundred thirty feet east of the place of the collision; and likewise, while approaching from at least three hundred thirty-two feet to the south thereof Haase could continuously see Lemke's car while it was approaching from at least eight hundred thirty feet east of the intersection. The three-lane concrete pavement of Oklahoma avenue, on which Lemke was approaching, sloped slightly downward toward the Ninety-Second street intersection; and the north lane, in which Lemke was driving, was clear of ice and an open roadway which was dry and not slippery. But on South Ninety-Second street, rain during the night had frozen so that the roadway thereof, on which Haase approached from his home to the south, was uniformly icy; and while on his way his car skidded because of the icy road when he came to another arterial on Ninety-Second street, about one half mile from the scene of the accident.

The stop sign on Ninety-Second street was fifty or sixty feet south of the Oklahoma avenue intersection. Haase testified that when he was twenty feet south of that sign and going about ten miles per hour, he first applied his brakes; and sub-

sequently he testified he estimated his speed at about that time at fifteen miles per hour. At the coroner's inquest he had testified that he was not going as fast as twenty-five miles per hour; and on an adverse examination he testified, "As far as I know, my speed was probably about twenty-five miles per hour." He testified also he was about thirty-four feet from Oklahoma avenue when he first took his foot off the gas, and was a little closer than that when he applied his brakes; that he noticed he was sliding about twenty feet after he put on his brakes and then was about thirty feet from Oklahoma avenue; that he then tried to turn to the left in an attempt to avoid the collision, which he thought would happen if he could not stop or turn, but that his car did not turn; that it continued to slide straight ahead and into the path of the Lemke car; that there was nothing about the motion of Haase's car which was unusual or served as a warning that it was out of control, nor did he sound his horn as such a warning.

On the other hand, there was evidence that Lemke, approaching in the north lane of Oklahoma avenue, applied his brakes and skidded about forty-five feet before his car struck the middle of the right side of Haase's car, in about the center of the intersection. On the trial Haase testified his car was stopped at the time of the collision; but at the coroner's inquest he had testified he did not know, but it seemed to him it was stopped or was moving slowly. Mrs. Lemke testified positively that Haase's car was not stopped on the highway, but was moving. However, after the Lemke car struck Haase's car, it did not come to a stop until it was off the pavement, in a ditch to the northwest of the intersection, and facing southeasterly, over fifty-two feet northwest of the point of impact. The Lemke car continued northwestward about forty-five feet until it stopped facing eastward while still on the pavement. Mrs. Lemke testified her husband was driving about thirty-five miles per hour just before the accident. At the coroner's inquest she had testified she "imagined" his speed was about

forty miles. Due to Lemke's death in the accident there is no testimony nor any proof of any statement made by him. But, as is claimed in Haase's brief, that Lemke was driving his car at a high, dangerous rate of speed can reasonably be inferred and deemed established by the physical facts that, after skidding forty-five feet on bare cement pavement, his car struck Haase's car with still such speed and force that it drove the frame members thereof to within thirteen inches of each other, ripped the left door off its hinges, tore off about one third of the top, and caused other major damages, and forced the car at least fifty-two feet across the intersection and into the ditch on the northwest corner thereof.

The jury found that Lemke was causally negligent in respect to lookout and speed; but was not negligent in respect to management and control. His automobile liability insurer (hereinafter called the "insurer") contends there is no evidence to sustain the jury's finding that he was causally negligent as to lookout and as to speed. The insurer claims that the only evidence which reflects any light whatever on Lemke's conduct in respect to lookout is the fact that he did apply his brakes and actually skidded the last forty-five feet before the impact; that this is insufficient to show negligent lookout on his part; and that as there is no direct evidence as to what he was doing with respect to lookout immediately preceding the accident, and he died as a result thereof, there is applicable under such circumstances the presumption that he used due care for his own safety, until there is competent evidence to overcome that presumption. In support of these conclusions the insurer cites *Ray v. Milwaukee Automobile Ins. Co.* 230 Wis. 323, 283 N. W. 799; *Potter v. Potter,* 224 Wis. 251, 272 N. W. 34.

The presumption therein stated can, in the cases at bar, reasonably be deemed by the jury to have been overcome, and its findings that Lemke was causally negligent as to lookout can be sustained by reason of evidence which the jury could

consider credible and sufficient to establish the following physical facts. Although, while the cars were approaching for the last several hundred feet, Lemke had a clear and unobstructed view of the icy condition of the intersection and roadway on which Haase was approaching, and could have readily seen that, although Haase's car slowed up somewhat when about twenty feet south of the stop sign, it then commenced and continued to skid without coming to a stop, Lemke nevertheless continued approaching at such a high and dangerous rate of speed that upon applying his brakes and his car skidding forty-five feet on the dry cement pavement, it nevertheless struck Haase's car with such force as to inflict the major damages mentioned above, and continued to force Haase's car fifty-two feet across the intersection until it came to a stop facing southeastward in the ditch on the northwest corner. As Haase's continuing approach on the icy roadway and the skidding of his car without coming to a stop was visible to Lemke while he was approaching, and he evidently failed to apply his brakes until he reached nearly the place at which it commenced to skid, the jury could reasonably infer and find that he had negligently failed to keep a proper lookout. In view of the favorable opportunity which Lemke had to observe, in ample time to avoid a collision, the existing circumstances which rendered his manner of approach highly dangerous, and of his apparent failure to avail himself of that obvious opportunity, it was within the province of the jury to find that he failed to exercise due care for his own safety by keeping a proper lookout and was therefore causally negligent in this respect. Likewise in view of said physical facts the jury could consider incredible Mrs. Lemke's testimony that her husband was driving at thirty-five miles per hour; and was warranted in finding that he was also causally negligent as to speed.

The insurer contends that as the judgment against it for Andrew C. Haase's recovery is based largely on the jury's award of $5,000 as damages for his *permanent injuries* caused

by Fred Lemke's negligence, the judgment cannot be sustained because the verdict is defective in so far as some of the essential findings in relation to Haase's right to recover thereon were not concurred in by at least five sixths of the jurors, as is required by sec. 270.25, Stats., in order to constitute the verdict of the jury. The alleged defect is due to the following situation. Juror Kremarik dissented from the findings that there was negligence on the part of Lemke in respect to lookout, and that such negligence was a cause of injury to Haase. Juror Winter dissented from the finding that there was causal negligence on the part of Lemke in respect to speed; and he dissented from the finding that Haase was not negligent in respect to management and control; and also dissented from the findings that fifteen per cent of the total causal negligence was attributable to Haase and that eighty-five per cent thereof was attributable to Lemke. In addition there was the dissent by a third juror, Kiel, from the jury's assessment of Haase's damages at $5,000 for his permanent injury. As there consequently was not the required concurrence of at least ten jurors in all findings of the facts essential to entitle Haase to the recovery of eighty-five per cent of the jury's assessment of $5,000 as the damages for his permanent injury the verdict is fatally defective in respect thereto. Under the circumstances there is applicable the statement in *Stylow v. Milwaukee E. R. & T. Co.* 241 Wis. 211, 217, 5 N. W. (2d) 750,—

"In respect of plaintiff's contributory negligence, the jury was unanimous as to all items but 'lookout.' There were two dissenters to the conclusion that plaintiff was not guilty of negligent lookout. In respect of the award of $3,000 for personal injury, pain and suffering, there was a dissenting vote by a juror other than the two who dissented upon the lookout question. Thus, the same ten jurors did not agree as to negligence, contributory negligence, and damages, and under the rule in *Biersach v. Wechselberg,* 206 Wis. 113, 238 N. W. 905, the verdict is fatally defective."

Consequently a new trial must be granted in relation to all of the issues in the action between Andrew C. Haase and the insurer. However, that defect in the verdict does not affect the right of Hazel Haase to recover the $300 assessed as her damages for pain and suffering and the provision in the judgment against the insurer to that effect must be affirmed.

On the appeal of Anna Lemke in Case No. 153 in her action against Andrew C. Haase, she contends the court erred in stating in its decision that her complaint "is to be dismissed for the reason that she has already been compensated for her injuries in an amount in excess of that assessed by the jury." For the consideration of that contention it suffices to note the following. In connection with findings in the verdict that negligence of Andrew C. Haase caused personal injury to Anna Lemke, the jury assessed her damages for her pain and suffering at $1,000. However, prior to the trial she had received on account of the personal injury sustained by her in the collision the sum of $1,500, paid by her husband's automobile liability insurer pursuant to a covenant not to sue executed by her, which contained an express reservation of her rights against Haase. She contends that by reason of that reservation Haase was not relieved of his responsibility to her by reason of the payment to her of said $1,500; and in support of her contention she relies upon the provision in sec. 113.04, Stats., that—

"Subject to the provisions of section 113.03, the obligee's release or discharge of one or more of several obligors, or of one or more of joint, or of joint and several obligors shall not discharge co-obligors, against whom the obligee in writing and as part of the same transaction as the release or discharge, expressly reserves his rights. . . ."

The contention cannot be sustained. The jury's assessment of Anna Lemke's action against Andrew C. Haase of her damages for her pain and suffering at $1,000 is, as between them, conclusive and final in respect to the amount of damages

which she is entitled to be paid for her pain and suffering as the result of the injury sustained by her in the collision. As the sum of $1,500 paid to her on account of said injury in discharge of another joint tort-feasor's liability therefor is in excess of the jury's assessment of $1,000 as the amount of her damages by reason of the injury in question, she is not entitled to the payment of any further amount therefor from any other joint tort-feasor. As is stated in 45 Am. Jur., Release, p. 677, sec. 4,—

"An injured person can have but one satisfaction for his injuries; and therefore the amount paid by the tort-feasor in whose favor the covenant not to sue was given will be regarded as a satisfaction *pro tanto* as to the joint tort-feasors."

In *Ellis v. Esson,* 50 Wis. 138, 146, 6 N. W. 518, the court said:

"In the language of the learned counsel, 'the injured party is entitled to full compensation for his injuries, and *to but one compensation.*' When, therefore the injured party receives a full compensation *in fact* from one of two or more joint wrongdoers, or when he enters into such a contract with one that the law raises a presumption that he has received such full compensation from him, such receipt of compensation, or such agreement, is a bar to an action against the other wrongdoers." To the same effect see *Abraham v. Clark,* 202 Wis. 451, 453, 232 N. W. 865; *Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 60, 180 N. W. 269; *Kropidlowski v. Pfister & Vogel Leather Co.* 149 Wis. 421, 427, 135 N. W. 839.

Consequently Haase is entitled to have the $1,500 received by Anna Lemke from the insurer applied on the $1,000 assessed by the jury as her damages in her action against Haase, as the amount of her damages for the injury in question, and as she has been paid more than that amount, the court rightly dismissed her complaint against Haase.

In Case No. 154, the action brought under sec. 331.03, Stats., by Anna Lemke, as administratrix of the estate of Fred Lemke, against Andrew C. Haase to recover damages for the

wrongful death of her husband, it is contended that the court erred in dismissing the complaint instead of ordering judgment for the recovery of the amounts assessed by the jury as her damages for her pecuniary loss resulting from his death and for loss of his society and companionship. Recovery thereof was denied by the court on the ground that the jury found Fred Lemke was causally negligent with respect to lookout and speed and his negligence was eighty-five per cent of the total causal negligence; and that those findings were approved by the court. As Lemke's contributory negligence was greater than that of Andrew C. Haase, there could have been no recovery from him by Lemke for his injury if he had survived. Consequently, as Lemke would not have been then entitled to recover such damages from Haase, there is no liability on the part of the latter for the recovery of such damages in the action brought under sec. 331.03, Stats. This provision reads:

"Whenever the death of a person shall be caused by a wrongful act, neglect or default and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages notwithstanding the death of the person injured. . . ."

By the use of the words therein "and the act, neglect or default is such as would, *if death had not ensued,* have entitled the party injured to maintain an action . . . in respect thereof," the right to recover thereunder is definitely limited to solely cases in which the injured party could have recovered if his death had not ensued. As is stated in *Callies v. Reliance Laundry Co.* 188 Wis. 376, 381, 382, 206 N. W. 198, 42 A. L. R. 712,—

"Sec. 331.03 of the statutes of 1925, in operation since 1857, provides for the survival of a cause of action in case of the

death of a person caused by the wrongful act of another, and for a recovery by the personal representative *only in case where the party injured, had he lived, would have been entitled to recover.* This legislative declaration is an adoption of the common-law rule that in case of the splitting up of the cause of action each part stands upon the same basis and is subject to the same defenses. It can make no difference, so far as the contributory negligence of the minor is concerned, whether the whole cause of action, as in case of death, is given the parent by statute, or in case of an injury not resulting in death only, a part of the cause of action is given it by the common law. In both cases the parent is free from contributory negligence, and in both cases he has suffered damage at the hands of the defendant, and in both cases he is given a cause of action by law. In one case the whole cause of action passes from the minor to the parent by operation of law and in the other only a part of the cause of action so passes. We see no reason why both should not be subject to the same defenses. This is an equitable doctrine. . . . When the statute passes a whole cause of action from a deceased person to another, it passes it upon equitable principles in the condition in which the deceased left it, that is, subject to the same defenses. It is true that in neither case is the person to whom the cause or a part of the cause of action is transferred to blame. He is free from contributory negligence, but he must be content to take what the law gives him. Neither the whole nor a part of the cause of action can be purged from contributory negligence where that exists by merely a legal transfer or assignment." See also annotations in 42 A. L. R. 717 *et seq.*

In Case No. 159 the insurer contends the judgment is also erroneous because it fails to provide for contribution to the insurer by Andrew C. Haase toward the damages of $300 for pain and suffering sustained by Hazel Haase, which she is entitled to recover under the judgment. Although a cross complaint for such contribution had been filed by the insurer as part of its pleadings, it apparently failed to direct the attention of the court thereto in any of the proceedings which culminated in the entry of the judgment. Consequently the court cannot be deemed to have committed any error, nor can error now be

assigned so as to entitle the insurer to a review of the judgment in this respect. *State ex rel. Pallange v. Wisconsin R. E. B. Board,* 241 Wis. 77, 78, 4 N. W. (2d) 167; *In re Assignment of Milwaukee S. & W. Co.* 186 Wis. 320, 329, 202 N. W. 693.

It·follows‚that in Cases Nos. 153 and 154 the judgments must be affirmed. In Case No. 159 there must be affirmed the provision in the judgment which provides for the recovery of $300 from the insurer by Hazel Haase as her damages for her pain and suffering; but in so far as the judgment provides for recovery from the insurer by Andrew C. Haase of $5,185, it must be reversed and the cause remanded with directions to grant a new trial on all issues arising in relation·to them under their pleadings.

*By the Court.*—Judgments affirmed in Cases Nos. 153 and 154.

In Case No. 159 the judgment is affirmed in part; and is reversed in part and the cause remanded with directions to grant a new trial, as stated in the opinion.