PIEK and wife, Respondents, vs. KNITTER and another,
Appellants, and two other cases.

*November 17—December 15, 1948.*

For the appellants there were briefs by *Quarles, Spence & Quarles,* and oral argument by *Richard S. Gibbs* and *Arthur Wickham,* all of Milwaukee.

For the respondents Piek there was a brief by *Rubin & Ruppa,* attorneys, and *William B. Rubin* of counsel, all of Milwaukee, and oral argument by *William B. Rubin.*

*A. W. Richter* of Milwaukee, for the respondents Bluhm.

*Wallace A. Barr* of Milwaukee, for the respondent Rural Mutual Casualty Insurance Company of Wisconsin.

FRITZ, J.   The collision between automobiles operated by Richard Bluhm and Harry Knitter occurred between 11 a.m. and 12 m. on October 21, 1945, on Highway 30, about thirty-five feet west of the intersection of that highway, which runs east and west, with Highway SS, which enters the intersection from the northwest, and Highway 18, which enters the intersection from the southwest.   At that intersection those highways combine and continue eastward as Highway 30, with four concrete lanes.   Westward from the intersection Highway 30 is a two-lane concrete roadway twenty feet wide with wide, graveled shoulders north and south of the concrete, and at the south edge of the south shoulder there is a stop sign a few feet west of the intersection to halt eastbound traffic on Highway 30.   Westward from the intersection there is on Highway 30 an incline of about seven tenths of a foot in about one hundred feet, and from there westward there is a gradual decline in the next five hundred feet during the course of which

the elevation of the roadway is lowered about six feet and then there is a gradual rise of two feet in the next three hundred feet. In the entire distance of nine hundred feet west of said stop sign and also for several hundred feet east of the intersection Highway 30 is straight with no obstructions to the view to the east along Highway 30, except as due to the changes in the grade.

Knitter and likewise Richard Bluhm were familiar with the highways entering the intersection. As the cars approached the place of collision Bluhm was driving his car westward on the north lane and Knitter was driving eastward on the south lane of Highway 30 and the collision occurred when, upon Knitter suddenly "jamming on" his brakes, his car went into a revolving skid and spun around on the concrete roadway so that the right front side thereof struck the left front and side of Bluhm's car when it was thirty feet west of the stop sign. Bluhm's car came to a stop with its front against a large boulder on the north side of the north graveled shoulder about thirty-five feet west of the stop sign.

On the trial the jury found, upon evidence in which there were conflicts in material respects, that Knitter, in operating his car, was causally negligent in respect to (1) speed, (2) lookout, (3) management and control, and (4) failing to keep to the south of the center line of the highway; but that Richard Bluhm, in operating his car, was not negligent in respect to (1) speed, (2) lookout, (3) management and control, and (4) keeping to the north of the center line of the highway.

On this appeal, Knitter and his insurer contend there is no evidence (1) of negligent lookout on his part; or (2) that he was guilty of negligent speed. On the issue as to whether he was negligent in the latter respect there was evidence which the jury could consider credible, to the following effect: Although Bluhm's westbound car, approaching in the north lane, was within sight of Knitter while he was driving eastward from several hundred feet west of the stop sign, at which he

knew he was required to stop before entering the intersection, he nevertheless continued approaching at such a high rate of speed that when, as Bluhm's car was about to pass along the north lane, Knitter suddenly "jammed on" his brakes in attempting to halt at the stop sign, his car immediately began to skid with its rear end revolving around so that its right front struck the left front and side of Bluhm's car when it was about thirty feet west of the stop sign, and then continued spinning around and moving eastward until Knitter's car finally came to a stop on the north half of the intersection about fifty feet east of the stop sign. The speed at which Knitter continued approaching until he "jammed on" his brakes was evidently so excessive that as William Piek, a guest in Bluhm's car, testified, "Bluhm exclaimed: 'What is the matter with that damn fool?' and as soon as Bluhm had that out of his mouth, we had it."

Consequently, under the evidence which the jury could consider credible in relation to Knitter's excessive speed and the momentum of his car up to the time of the impact and as it continued spinning around after violently striking the front and scraping the side of Bluhm's car, with damaging consequences, and then went still farther about eighty feet, the jury was warranted in finding that Knitter was causally negligent in respect to speed. *Haase v. Employers Mut. Liability Ins. Co.* 250 Wis. 422, 428, 27 N. W. (2d) 468.

In relation to lookout on the part of Knitter there were such conflicts and confusion in his testimony as to what he claimed he saw in relation to approaching westbound cars—how many and their relative positions—that the jury could consider incredible his testimony as to lookout. Thus, on direct examination by his attorney, Knitter testified,—

"When I was at that point, two hundred or three hundred feet before the stop sign, I saw the Bluhm car as it proceeded west. He was in the group, as I mentioned yesterday. If

there were three or four with it, I don't know. I didn't watch the Bluhm car in particular. I watched that group of cars that he was in."

But on cross-examination, he testified,—

"I don't know whether it [Bluhm's car] was the first, second, or third of the group of cars. . . . The first of this group of cars was about two hundred feet before the stop sign; before the point of collision. I didn't see the first car; it was a group of cars. . . . I don't know whether the Bluhm car was the first of the group or the second or third. The car which was number one to my knowledge never slackened up in speed. . . . When I was within two hundred feet of the stop sign I saw the unusual movement of one of the cars. He veered out of the lane of this group of cars which was coming up in my direction. . . . I don't know whether it was number one, two, three, four, or five. There were only three or four cars. There were no more than four. I know because I saw the group. . . . As to whether I don't know how many cars were approaching on the north side of the highway, I believe you are right. I don't know just what part of it where this car came from in that group that I afterwards had a collision with it."

On the other hand, the testimony of the other witnesses is that during the time Knitter was driving the last two hundred feet west of the stop sign, Bluhm's car was the only car,—and not one of a group of three or four cars,—about to pass westward at the stop sign. Consequently, it was within the province of the jury to consider their testimony credible and that Knitter's testimony was erroneous because of his failure to keep a proper lookout.

Defendants contend the court erred in failing to instruct the jury, as defendants requested,—

". . . that accidents may occur when no one is at fault. Under certain circumstances, collisions between motor vehicles are unavoidable. The fact that the automobile operated by the defendant Knitter skidded, does not indicate that he was negligent or that he failed to exercise ordinary care. Skidding may occur without fault, and when it does occur, it may

likewise continue without fault for a considerable space of time. It means a partial or complete loss of control of the car under circumstances not implying negligence."

Defendants claim that by failing to so instruct, there was no instruction on the subject of skidding. That instruction might have been applicable and proper if Knitter had not "jammed on" his brakes, as he testified and if he had *not* been causally negligent, as the jury found, with respect to speed, lookout, and keeping in the south lane of the highway. But in view of the jury's finding in those respects and its finding that Bluhm was not negligent in the four respects stated in the verdict, it is evident (1) that the skidding of Knitter's car was due to his driving too fast and not having his car under sufficient control to halt in time at the stop sign, because of which, upon "jamming on" his brakes, it skidded and revolved around and entered Bluhm's north lane of travel and collided with his car; (2) that it was not because of the proximity of Bluhm's car in the north lane or any attempt by Knitter to avoid colliding with it that he "jammed on" his brakes; but that he did so upon suddenly realizing that he could not otherwise halt at the stop sign. In view of those facts and the consequences thereof, it is evident that no emergency was created by Bluhm or by anything else than Knitter's negligence in the respects found by the jury; and that the skidding of his car was due to his own negligence in those respects. Under the circumstances, there was applicable and sufficient the court's instruction to the jury that,—

". . . any person, who, without negligence on his part, is suddenly placed in an emergency or circumstances of danger, either to himself or to others, or to both, and. is compelled thereby to act instantly in order to avoid injury, is not guilty of negligence if in such circumstances he makes such choice and takes such course as a person of ordinary prudence might reasonably take on the instant, even though it should turn out not to have been the best or the safest course; and this applies

even though the course taken be in violation of some rules of the road."

As this instruction was applicable to any and all acts, including skidding, committed by a person under the circumstances stated therein, the court's omission to instruct the jury specifically in relation to skidding, as requested by defendants, did not constitute reversible error.

*By the Court.*—Judgments affirmed.