McCauley, Plaintiff and Respondent, vs. International Trading Company, Defendant and Appellant: Miller, Executrix, and another, Defendants and Respondents. Miller, Executrix, and another, Respondents, vs. International Trading Company, Appellant.

*October 7—November 9, 1954.*

For the appellant there were briefs by *Kivett & Kasdorf*, attorneys, and *A. W. Kivett* and *Stephen C. de Vries* of counsel, all of Milwaukee, and oral argument by *Mr. A. W. Kivett* and *Mr. de Vries*.

For the respondent Dorothy Miller McCauley there was a brief and oral argument by *George H. Moeller* of Milwaukee.

For the respondents Clara F. Miller, as executrix, and the Employers Liability Assurance Corporation, Limited, there was a brief by *Torphy & Torphy, Thomas E. Torphy,* and *Bernard J. Luettgen,* all of Milwaukee, and oral argument by *Mr. Thomas E. Torphy* and *Mr. Luettgen.*

For the respondent Clara F. Miller, as executrix, there was a brief and oral argument by *Charles C. Erasmus* of Milwaukee.

BROWN, J. International Trading Company, hereinafter sometimes called the "corporation," has a country estate and as a part of its facilities owns a number of saddle horses. Waukesha County Trunk Highway K, carrying considerable traffic, runs between the horse barn and an unfenced field belonging to the corporation. The horses require exercise during the times when they are not ridden sufficiently by the corporation's patrons and it was the duty of a corporation employee named Werseen to exercise them in such periods. The corporation manager authorized Werseen to allow Barbara Hochmuth, an eleven-year-old girl who lived near by, to ride one of the smaller horses named Pat so that it might have exercise and she had ridden that horse several times.

On May 2, 1952, Barbara came to the barn after school and Werseen saddled Pat for her, using an adult-sized western saddle on which she had ridden before. He saddled another horse for himself and they rode together across Highway K, into the field, from which a crop of oats had been harvested, and then through other areas to Barbara's home, after which they returned by the same route. They came back to the oat field at about 5:30 p. m. and there Barbara and Werseen galloped their horses in different directions so that they became somewhat separated, with Werseen facing in such a direction that Barbara was not in his line of sight. At that time Barbara lost her balance and, after clinging to her horse for a short time, fell off. She called out as she did so. Werseen turned his head, saw her falling, and saw her horse running toward its barn. He made no attempt to catch or stop Pat and the testimony was that any effort to do so would have been useless under the circumstances. Instead, he rode up to Barbara to see if she was hurt. Meanwhile, Pat ran in the field rather close and parallel to Highway K for a time and then, suddenly changing direction to cross the road, ran in front of an automobile driven by Dr. Edward F. Miller and also occupied by his wife, Clara, and his daughter, Dorothy. Dr. Miller and the passengers in the car had seen the riderless horse running in the field but Dr. Miller was unprepared for the horse coming into the highway close ahead of him. He struck the animal and the collision caused personal injuries to him and to the two women. All three brought actions against the corporation to recover their damages, alleged to be due to the negligence of the corporation in permitting its horse to be at large in the highway. The actions of the two women joined Dr. Miller as a defendant alleging causal negligence on his part in his operation of the automobile. The actions were consolidated for trial and for

these appeals. Dr. Miller died before trial was had, from causes unconnected with the accident, and his action was continued by his executrix. Dr. Miller's insurance carrier was made a party to the suits against him. For the sake of brevity and simplicity this discussion of the issues will ignore the insurer and the death of Dr. Miller, since no change in material facts or principles of law will be caused by doing so.

The consolidation of the actions of the three plaintiffs resulted in a special verdict of 20 principal questions with numerous subdivisions, only a few of which apply to all of the actions, and the verdict must be analyzed separately for each action. Mrs. Miller's individual claim was settled after trial and the questions applicable only to her have been eliminated.

Dorothy Miller, now Dorothy Miller McCauley, sued Dr. Miller (her host) and the International Trading Company, alleging that the negligence of Dr. Miller in operating the automobile and the negligence of the corporation in failing to keep its horse out of the highway caused the collision and the injuries which she sustained. In a special verdict the jury found Dr. Miller guilty of causal negligence in various respects with consequent damage to the plaintiff but it also found that "such negligence [was] . . . the result of lack of skill or judgment on his part." Being of the opinion that this answer established Dorothy's assumption of the risk of this accident and therefore that, as to her, her father's negligence was not actionable, the trial court entered judgment February 3, 1954, dismissing the complaint as against Dr. Miller. The appeal from that judgment is not taken by Dorothy, the plaintiff, but by International Trading Company, Dr. Miller's codefendant.

The corporation did not serve on Dr. Miller or his insurance carrier any pleading demanding contribution on account of any judgment which the corporation might be compelled

to pay, nor did it make any such demand or assert any right to contribution at any time during the trial or afterward. Even on the appeal it does not argue that it has a right to contribution. Under the circumstances, the corporation is not entitled to a judgment of contribution against Dr. Miller. *Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 27 N. W. (2d) 468. Having demanded no relief against its codefendant and being entitled to none, the corporation is not aggrieved by the judgment which discharged that defendant from liability to the plaintiff. A party which is not aggrieved may not maintain an appeal. *Hammond-Chandler Lumber Co. v. Industrial Comm.* (1916), 163 Wis. 596, 158 N. W. 292; *Larson v. Oisefos* (1903), 118 Wis. 368, 95 N. W. 399. The plaintiff, who is aggrieved and who could appeal if she chose to do so, has not sought review. The judgment of February 3, 1954, must be affirmed.

On March 18, 1954, the court entered judgment in favor of Dorothy Miller McCauley and against International Trading Company for $3,163.21 damages and costs, based upon the special verdict, as modified by the court in several respects, and upon an election by Dorothy to accept judgment in that amount, which was a reduction of the damages found by a majority of jurors.

The special verdict found that appellant was "negligent in failing to have the horse off the public highway at the time of the collision" and that such negligence was causal. The corporation submits that there is no evidence by which such a finding of negligence may be supported. It is true, as the corporation asserts, that the horse was gentle and that Barbara had ridden him before without mishap. At those times she had used the same western saddle, which had stirrups which Barbara testified were too large and caused her to slip. (The words "too large" were objected to as a conclusion and the court sustained the objection but there was

no motion to strike them or to direct the jury to disregard them and no such instruction was given.) Werseen testified that he always went in attendance when children rode the horses. The jury could reasonably draw the inference that such attendance was in anticipation of some mishap which he was expected to prevent or minimize and certainly the most probable mishaps are that a horse would get out of a child's control either by running away or by the child falling off. It was in evidence that Werseen had galloped away from Barbara and at the time of her fall was too far distant to be of help in controlling her horse, and that upon getting loose a horse's propensity is to return to its barn, which in this case was across a traveled county highway. The evidence also shows that Barbara was permitted by the corporation to exercise the horse in an unfenced field with nothing to prevent its getting into the highway if she lost control and the attendant was not near enough at hand to take over.

Appellant relies strongly on *Fox v. Koehnig* (1926), 190 Wis. 528, 209 N. W. 708, which deals with a horse which got out of its barnyard in the nighttime and ran into plaintiff's automobile. In that case we mentioned what is still true, that there is no statute which prohibits livestock (with some immaterial exceptions) from being at large upon the highway. Therefore, we said, liability could not be predicated upon an unlawful presence of the horse in the road but must rest on ordinary principles of negligence. The jury found the owner of the horse negligent in failing to maintain a sufficiently secure barnyard fence and found such negligence to be a proximate cause of plaintiff's damages. We reversed a judgment for plaintiff, saying that in order to be a proximate cause the negligence complained of must be of such nature that an ordinarily careful and prudent person may reasonably foresee that an injury to someone may probably follow from it. Noting that it was the horse which had run

into the automobile and commenting that that was not the usual conduct of a horse, we concluded that such an accident was not within the field of reasonable anticipation, wherefore the owner's negligence in failing to have a better fence could not be deemed a proximate cause of plaintiff's damages. It does not detract from the unforeseeable character of the accident to acknowledge that if the horse had considered that its interest or honor required some reply to our observation concerning its peculiar behavior it could justly point out that its collision with the automobile occurred in the nighttime in the midst of a cloud of dust which as effectively concealed the automobile from the horse's view as it hid the horse from the driver of the car.

The existence of causal negligence depends upon the facts of the particular case and the present facts differ greatly from those in *Fox v. Koehnig, supra.* About the only thing in common is a collision between a horse and an automobile. Mr. Koehnig shut up his horse in the barnyard and went to bed. The fence was not horseproof, the horse got out, wandered away from the barn and in the course of its nocturnal ramble ran into plaintiff's automobile at a spot where the participants in the collision were hidden by dust from each other. This, as we then said, was not reasonably to be anticipated to follow from lack of ordinary care in maintaining the barnyard fence. Presently, we have the owner of the horse permitting a child to exercise it, using an adult-sized saddle, in an unfenced field bordering a well-traveled highway. The child is accompanied by the owner's groom, which is the invariable practice when children ride the horses, and which the jury may infer is for the purpose of controlling the horse if the rider is unable to; but the groom rides off to such a distance and in such a direction that he cannot see trouble developing nor cope with it when it comes. According to the evidence it was a natural propensity of a horse,

having got out of the control of its rider, to run for its barn, which, in this case, was across the highway. Under such circumstances, is it to be reasonably anticipated that the child might lose control of the horse and that the horse might then get into the road where it would become a hazard to traffic? We consider that these questions are not to be answered as matters of law but are properly for the jury. Its answers that it was negligent of the corporation to fail to keep its horse out of the highway and that such negligence was a proximate cause of the collision and resulting damages cannot be disturbed.

Appellant submits that judgment must be reversed because the verdict is defective in that the same 10 jurors did not agree on the questions of defendant's causal negligence, plaintiff's freedom from contributory causal negligence, and the damages. We consider appellant is right in this contention. To have a valid verdict the same 10 jurors must concur in the answers to all questions which are necessary to support a judgment; otherwise the verdict is defective. Sec. 270.25, Stats.; *Biersach v. Wechselberg* (1931), 206 Wis. 113, 238 N. W. 905; *Stylow v. Milwaukee E. R. & T. Co.* (1942), 241 Wis. 211, 5 N. W. (2d) 750. In the case at bar the jury unanimously found defendant guilty of causal negligence and Dorothy not guilty of contributory negligence. But on the damage question the jury found Dorothy's loss of earnings to be $1,000, Juror Laake dissenting, and her damage for permanent injuries $4,500, Jurors McKoane and Benge dissenting. Thus, no 10 jurors agreed in answering all the questions necessary to support a judgment and a new trial is required unless the trial court's effort to cure the defective verdict can be approved. The court changed the damage answers to $252.91 for loss of earnings and $2,000 for permanent injuries, saying that those were the highest amounts which a fair-minded jury properly instructed would

probably assess. It stated that with the dissents thus eliminated the verdict becomes a good verdict. We cannot consider it so. The changes were not made as amounts which the testimony established as a matter of law nor could they be. The assessment of such items was for the jury and no 10 of the jury agreed on them all. The trial court's estimate of damages could not be substituted for the several appraisals by different jurors when the question was one of fact for the jury and thus deprive the litigants of the protection afforded by sec. 270.25, requiring a five-sixths agreement in the verdict. The court itself seems to have recognized this for it gave options to both parties to accept the amounts so found by the court or submit to a new trial. Options are not given to parties to choose between accepting a jury award and having a new trial, and there could be no more need of extending options here if the court's answers were the equivalent of jurors' answers.

We observe, too, that it was the plaintiff who accepted the reduced amount, which was stated by the court to be the highest amount which a fair-minded jury properly instructed would probably allow. After her acceptance the judgment now attacked was entered in her favor for that amount plus costs and disbursements. If the court sets the *highest* figure, the option to accept it or have a new trial must be given the defendant. The plaintiff gets the option only when the court sets the lowest amount, for reasons stated in *Jolitz v. Fintch* (1938), 229 Wis. 256, 259, 282 N. W. 87. See also *Gerlach v. Gruett* (1921), 175 Wis. 354, 185 N. W. 195, and *Costello v. Schult* (1953), 265 Wis. 243, 61 N. W. (2d) 296. This error by itself might be cured by remanding the cause with directions to submit the option in accordance with the cited decisions but the defective verdict demands a new trial between Dorothy Miller McCauley and International Trading Company.

On June 16, 1954, the trial court entered judgment granting a new trial in the action which Dr. Miller brought against International Trading Company to recover damages for the injuries he sustained in the collision. International Trading Company appeals.

In the special verdict the jury found, among other things, that the corporation was causally negligent in failing to have its horse off the public road at the time of the collision (no dissents); that Dr. Miller was guilty of contributory causal negligence as to speed and control (Jurors Vetter and Fromme dissent both as to control and its causation); that the causal negligence is 33⅓ per cent on the part of Miller and 66⅔ per cent on the part of the corporation; that Miller's pain and suffering were measured by the sum of $250 (Fromme and Benge dissent), and that his loss of earnings was $500 (Fromme and Benge dissent). The trial court changed the answer apportioning causal negligence to 40 per cent on the part of Dr. Miller and 60 per cent on the part of the corporation. It also reduced the jury's figure of $500 for loss of earnings to $300. Then it gave the option to each party to accept a judgment based on the reduced total, stating that this was the highest amount which a fair-minded jury properly instructed would probably allow and if neither party so accepted to submit to a new trial. Neither party accepted the option and in due course the trial court entered judgment directing a new trial. International Trading Company has appealed.

The multiple dissents render the verdict defective, and the court's attempt to perfect it unavailing for reasons we have stated in the discussion of Dorothy's action against the corporation. As we have said there, the defective verdict requires a new trial. If a new trial could be avoided, as it cannot, we would feel compelled to restore the jury's apportionment of negligence. Under proper circumstances a trial

court may decide as a matter of law that one party's negligence is equal to or exceeds that of another, thus disposing of an action, and change a jury's apportionment to correspond. Nevertheless, comparison of negligence is peculiarly a jury, not a court, question. *Wasikowski v. Chicago & N. W. R. Co.* (1951), 259 Wis. 522, 524, 49 N. W. (2d) 481; *Johnson v. Sipe* (1953), 263 Wis. 191, 56 N. W. (2d) 852; *Steneman v. Breyfogle* (1933), 211 Wis. 5, 247 N. W. 337. We cannot approve an alteration by the court of less than seven per cent, as here, in the percentages allotted by the jury, when thereby the liability of a party is not affected in any respect except the amount payable.

The option to accept reduced damages was erroneously given the plaintiff for reasons already stated in the Dorothy Miller McCauley action but as no one exercised the option the judgment directed a new trial. A new trial is the result we reach also, though by a different route. The appellant's brief does not set out reasons why it believes this judgment should be reversed or inform us why the appeal was taken from it. We suppose that it was in the hope that we would declare the corporation was not liable, as a matter of law, for damage caused by its horse. This we are unable to do for reasons previously given. We conclude that the judgment directing a new trial in Dr. Miller's action against International Trading Company must be affirmed.

*By the Court.*—Judgment entered February 3, 1954, dismissing Dorothy Miller McCauley's complaint against Clara F. Miller, executrix of the estate of Edward F. Miller, deceased, and the Employers' Liability Assurance Corporation, Limited, affirmed. Because of the consolidation of appeals, on this appeal respondent shall be limited to one half the costs of printing her brief. Her other costs shall be taxed according to statute.

Judgment entered March 18, 1954, in favor of Dorothy Miller McCauley, plaintiff, and against International Trading Company, defendant, reversed and cause remanded with directions to grant said defendant a new trial between said parties only. Appellant shall tax costs according to statute.

Judgment entered June 16, 1954, granting a new trial in the action of Clara F. Miller, as executrix of the estate of Edward F. Miller, deceased, against International Trading Company, affirmed. Because of the consolidation of appeals, on this appeal respondent shall be limited to one half the cost of printing her brief. Her other costs shall be taxed according to statute.