CREIGHTON, APPELLEE, *v.* KIEHL ET AL., APPELLANTS.

(Decided February 4, 1938.)

Messrs. *Amerman & Mills,* for appellee.
Messrs. *Oscar M. Abt, J. Stewart Ake* and *Warren G. Smith,* for appellants.

SHERICK, J. This appeal is the aftermath of a successful will contest which set aside the testament of one Edward Pearson. Its proponents complain of certain court rulings and instructions, and that the verdict is against the manifest weight of the evidence. By reason thereof a reversal of the judgment is sought. We shall consider these claimed errors in such sequence as seems advisable.

The attack was waged upon two grounds, mental incapacity and undue influence. Upon the request of the contestant a special interrogatory was propounded which required the jury to find whether the testator at the time of the execution of his will was of sound or unsound mind. This query was answered by seven members of the jury to the effect that the testator was not of sound mind. The remaining five jurors did not subscribe to this finding. Neither did they otherwise indicate their judgment to be that the testator was sound in mind. No exception to this incomplete answer was made by either party at the time and no request was made concerning it, save such as is hereinafter noted. The general verdict returned was subscribed to by nine members of the jury. These matters are related for the reason that the appellee now maintains that the jury failed to answer the interrogatory, inasmuch as nine of its number did not concur therein; and that since the appellants made no objection or request in respect thereto, the answer as made can in no wise affect the general verdict and particularly that phase thereof which would relate to the issue of soundness of mind. It is urged that appellants' seeming acquiescence amounts to and is a waiver of their right to have had this interrogatory conclusively answered by the jury. The question thereby presented resolves itself to this: What is the legal effect of the returned special finding?

It is apparent that had nine jurors joined in the

answer to the interrogatory, its special finding of fact thereby established would clearly have been in direct conflict with that portion of its general verdict in so far as it embraced the issue of unsoundness of mind. The general verdict would then, of course, stand or fall upon the sole issue of undue influence. But we are faced with a number less than nine which presents a different and unusual picture. The question comes: Was this special finding properly received?

In *Maumee Valley Rys. & L. Co.* v. *Hanaway*, 7 Ohio App., 99 (105 to 107 inclusive), the court was confronted with a general verdict signed by twelve jurors and a special finding signed by nine of its members. This was after the adoption of the three-fourths jury rule, as now found in Section 11420-9, General Code. It is pointed out that the special interrogatory section, that is, Section 11420-17, General Code, does not require any given number of jurors to determine a question of fact, but that an interrogatory should only be answered in the event of a general verdict being arrived at. It was reasoned that:

"When the Constitution and statute required the unanimous vote of the jury to render a general verdict it was no doubt the law that the special interrogatories could only be answered by unanimous vote of the jury. It required the same number to answer the special interrogatories that was required to render the general verdict. When the Constitution and statutes were so amended as to permit a verdict by the concurrence of three-fourths of the jury, it would seem to follow from a fair interpretation of Section 11463, that the special interrogatories which were to be answered in case a general verdict was returned might be answered by three-fourths of the jury."

If the point made is sound and logical that a jury may not answer an interrogatory by a number less than three-fourths, as we think it is, then it must and

does follow that the answer of the seven jurors was no answer at all. It should not have been received. It should be presumed that the jury followed the instructions of the court and first arrived at its general verdict. But looking at the record we find that the jury asked for further instructions. We quote therefrom:

"Juror: Yes, sir. The instruction the jury would like to have, can we render a verdict other than on the question of the soundness or unsoundness of his mind when he made this will?

"The Court: If I understand the question correctly I will say this to you, that the court charged that you could find that this was an invalid will on two grounds, either or both; one is, that it was executed under undue influence; you can find it an invalid will on that ground alone, or you can find it invalid on the ground that the will was executed while he was of unsound mind and memory. You can find it an invalid will either singly or together, on these propositions. Any further question?

"Juror: The other question—If it is disclosed he was of unsound mind must this be signed by all?

"The Court: Only those members of the jury who believe that the will was executed while he was of unsound mind should sign; but this will have to be found by you by a preponderance of the evidence.

"Contestees except to the instruction of the court given at this time."

When the jury finally returned its conclusions, we find the following to have transpired:

"The Court: Ladies and Gentlemen of the Jury: The court wishes to ask if any member of the jury has failed to sign this interrogatory through inadvertence?"

The jury did not answer.

"The Court: If any of you jurors failed to sign this

interrogatory through inadvertence please speak up.

"Juror: I don't quite understand that.

"The Court: Well, the court's question is, has any member of the jury neglected to sign the interrogatory?

"Juror: No.

"The Court: Who failed to sign the interrogatory?

"Juror: No.

"The Court: So say you all? I take it from your silence you do.

"All right, ladies and gentlemen of the jury, this concludes your services in this case. * * *

"Mr. Virgil Mills: Before the jury is discharged the contestant excepts to the court refusing to ask the jury, that is those who had signed the verdict, if any of those had failed to sign the interrogatory as to conform the special interrogatory to the verdict."

The trial court's answer to the second question leads one to believe that the jury might thereby have been misled, in that a number less than three-fourths might or should sign the special finding if they so found. To these instructions we find the proponents excepting. Later on, we find the contestants excepting to the court's refusal to directly ask the two jurors who signed the general verdict if they had failed, through neglect, to sign the interrogatory. We here remark that responses thereto could have harmed only the appellee had the answers of the two jurors been in the negative. In view of the situation it should have been done.

We would note the fact that neither party excepts to the receipt of the special finding. We perceive, however, that it may be inferred that at the jury's discharge, the appellee sought to dispel the confusion; that seven jurors might have predicated their concurrence in the general verdict upon the issue of mental incapacity, and two upon the issue of undue influence;

or the fact may be that the jurors actually reached an agreement on one or the other or both issues. If they did so conclude on the issue of unsoundness of mind that two jurors declined to say so specifically. No one save the jury knew the answer to this enigma. Neither is this court inclined to or capable of solving it. To paraphrase the expression of Horace Greeley, "When the jury was discharged, then God only knew what the jury actually did."

If the attempted answer to this interrogatory is no answer, then it may be reasoned that the situation here encountered must be governed by the rule found stated in the note appearing in 24 L. R. A. (N. S.), 1 (58), that:

"Where a special verdict or a special finding is silent upon an issue, it is equivalent to a finding upon that issue against the party who has the burden of the issue."

We find that Ohio has subscribed to that rule in *Noseda* v. *Delmul,* 123 Ohio St., 647, 176 N. E., 571, 76 A. L. R., 1133 (and note appearing on 1143); and *Smith, Admr.,* v. *Cushman Motor Delivery Co.,* 54 Ohio App., 99, 106, 6 N. E. (2d), 594.

If it were not for one fact herein appearing, this court would unhesitatingly apply this rule and hold that its submission to the jury and its answer by seven jurors, or its being considered as not answered, to have the effect of taking the issue of unsoundness of mind out of this case just as if it had not been proven by the evidence. The fact to which we refer is in the attempt made by contestant's counsel, before the discharge of the jury, to definitely ascertain what the two jurors who signed the general verdict, but who did not sign the special interrogatory, actually intended by their omission. The proper course would have been for the trial court to have caused the jury to further deliberate its answer to the interrogatory, under an in-

struction to either answer it in the affirmative by at least three-fourths of its number, or to return it unanswered. Inasmuch as special verdicts, as do also special findings of fact, control a general verdict, Section 11420-18, General Code, it should and does follow that Sections 11420-10 and 11420-11, General Code, apply with equal force to special findings of fact. This being true, it may not be said that the court's inquiry of the jury and the answer "no" by one juror was sufficient. Neither would the fact that the eleven other jurors sat mute be conclusive, for these statutes direct that the jury be polled. It is not the court's province to make choice of a way other than the law prescribes. Counsel's final request amounts to a request for such a poll. The contestant was not responsible for the court's failure to adhere to the law.

He actually tried to unravel the riddle. He stood to lose all by a negative answer from these two jurors. We mean all, because we are of the view that there is hardly sufficient evidence in this record to have maintained the general verdict upon the issue of undue influence. On the other hand, we find the proponents sitting silent at this time, with a general verdict returned against them and a very probable inability intimated, that three-fourths of the jury were unable to agree upon an affirmative answer to the contestant's interrogatory, which would not only have concluded a fact in their favor but also one of the two important issues, of which the contestant had the burden of maintaining. It appeals to this court that the proponents should not only have joined with the contestant in his request, but should have insisted upon it, or rather to have suggested the proper course to be pursued by the court. The fact is, we find the proponents content with the nebulous atmosphere in which we find the litigants. We perceive no just reason why the rule should be here arbitrarily applied and the propo-

nents aided by this court, when they neglected to avail themselves in the trial court in proper season of an opportunity to clarify the entire matter. It is our judgment that the returned special finding can in this case in no way effect the general verdict, which, if predicated on the issue of mental capacity, finds ample evidence in the record for its support.

It is further urged as error, that, the court's instruction to the jury in response to its first question, which is hereinbefore set forth, unduly emphasized the word "invalid," and that thereby the jury might have been swayed in its judgment by a belief that the trial court entertained an opinion that the will should be set aside. We find no error in this respect, in view of the questions propounded. The subsequent happenings fortify the only logical conclusion that might have been drawn from these questions, which is, that at least a majority of the jurors were inclined towards a general verdict setting aside the will. We are not convinced that the words employed had the effect upon the jury as is claimed. This matter we also find to be besmirched by the fog which surrounds the jury's findings.

It is also said that the trial court erred in its general charge on the question of mental capacity, when it was instructed that the testator "should have that degree of mind required to make a contract or to transact business." The contestant promptly recognized that this statement, if it stood alone, was erroneous; but it is suggested, and borne out by the record, that the court immediately prior thereto charged specifically the fourth paragraph of the syllabus of *Niemes* v. *Niemes,* 97 Ohio St., 145, 119 N. E., 503, and concluded it with the comment that "greater capacity than this the law does not require; and less capacity than this is not enough." We also find that the court reiterated the elements of the *Niemes case, supra,* in its conclu-

sion of the charge on this subject. When the charge of the court on this issue is examined in its entirety, we do not find that the line complained of was prejudicial to the contestees.

We have examined all of the errors insisted upon, including the motions made and overruled, in our consideration of the major question. It is specified that error intervened in the acceptance or rejection of evidence. No particular evidence in this respect has been pointed out. This claim is, therefore, considered as having been abandoned.

For the reasons indicated and in order that fairness be accorded and manifest justice done, the judgment is affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and LEMERT, J., concur.