PLASTER, APPELLEE, *v.* THE AKRON UNION PASSENGER DEPOT CO., APPELLANT.*

(No. 4511—Decided September 14, 1955.)

*Messrs. Carson & Roderick, Mr. Frank M. Enright,* and *Mr. Raymond J. McGowan,* for appellee.

*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

HUNSICKER, J. This is an appeal on questions of law from a judgment awarded on a verdict of a jury in an action in which Clarence D. Plaster, the appellee, was plaintiff, and the appellant herein, The Akron Union Passenger Depot Company, was defendant.

The appellant, herein called depot company, owned and operated an escalator on its premises for the convenience of persons using the railway passenger depot. The appellee, Clarence Plaster, on July 11, 1952, went to the depot to meet his daughter and her child, who were arriving on a train coming from New York City. While standing on the ascending escalator, a lady ahead of Mr. Plaster fell backward onto his daughter, who, in turn, fell backward.

In an attempt to hold the ladies upright and also keep from falling backward, Mr. Plaster tried to brace himself; but, the

*Motion to certify the record overruled, May 9, 1956. Appeal dismissed, 165 Ohio St., 289.

weight of those above him being too great, he, too, fell backward and onto the steps of the escalator, which was still in the process of moving upward.

Mr. Plaster became wedged between the sides of the escalator and suffered severe injuries. When the first lady fell, someone screamed, and other people called out to stop the moving escalator; but other persons ahead and behind were unable to stop the moving stairway. Some of these witnesses testified they could not see or find a switch to prevent the stairway from continuing to move. The escalator was finally stopped by an employee of the Pullman Car Company.

This appeal challenges the propriety of the verdict and judgment Mr. Plaster obtained at the hands of the Common Pleas Court of Summit County, Ohio.

The appellant, depot company, says that the trial court erred:

"1. In overruling the motion of the defendant for a directed verdict at the close of all the evidence.

"2. In overruling the motion of the defendant for a judgment n. o. v.

"3. In accepting the general verdict and findings of fact.

"4. In rendering judgment on the general verdict.

"5. In the admission of evidence.

"6. In failing to exclude evidence of fractures of the spine.

"7. In failing to exclude evidence of a fracture of the humerus.

"8. In the general charge to the jury.

"9. In failing to charge the jury as requested by the defendant.

"10. The verdict and judgment are contrary to law.

"11. The verdict and judgment are not sustained by sufficient evidence.

"12. The verdict and judgment are excessive.

"13. Other errors apparent upon the record."

In our examination of these claimed errors, we determine that none are prejudicial to the substantial rights of the appellant, unless it be the errors claimed in assignments 3 and 4 set out above. The depot company insists that the jury verdict was defective and legally insufficient.

The depot company submitted to the jury, in the instant case, two interrogatories or requests for findings of fact, as follows:

"No. 1. Do you find that the defendant was negligent in one or more of the respects stated in the petition?"

"No. 2. If your answer to question No. 1 is in the affirmative, then state of what said negligence consisted."

On the first question the answer was "Yes." Twelve jurors signed this interrogatory, but one juror crossed out her name on that finding before the verdict was submitted to the trial court.

Eleven jurors, all except the juror who crossed out her name on interrogatory number one, signed the second special finding, which was answered as follows:

"We the jury find by the greater weight of the evidence that the defendant was negligent in the following:

"(a) The plastic cover over the emergency stop button at the top of the escalator was not in place on July 11, 1952.

"(b) The door at the bottom of the escalator, partially covered the escalator emergency stop button on July 11, 1952.

"(c) The emergency stop button at top and bottom of the escalator could not be readily identified by a layman."

The general verdict was signed by nine jurors, including the one who had crossed out her name on interrogatory number one.

This juror, who had crossed her name off the answer regarding negligence; failed to sign interrogatory No. 2; and who had signed the general verdict, was examined in reference to her acts by the trial court. She steadfastly maintained the position taken by her written declaration, saying she did not sign either interrogatory No. 1 or No. 2.

Counsel for the appellant objected to the trial court receiving the general verdict, in view of the matters herein set out. The trial court nevertheless accepted the verdict, and thereafter awarded judgment on the verdict. There was no waiver by counsel for the depot company of any defect in the verdict if the jury verdict was defective and legally insufficient.

We do not find many cases on the subject before us. Counsel have been diligent in their search for all the authorities on

this subject, but the situation is one that has not been before the courts very often.

The statutes concerning verdicts, which are pertinent herein, are Sections 2315.09, 2315.10, 2315.11, 2315.12, 2315.13, 2315.16, and 2315.17, Revised Code.

Our inquiry is directed herein to the question, Is it necessary, in order to return a valid verdict herein, for at least nine of those jurors who signed the special interrogatory finding the depot company guilty of negligence, to also sign the general verdict for the plaintiff?

Section 2315.16, Revised Code, says that the verdict and special finding must be entered on the journal and filed with the clerk. Therefore, the general verdict and the findings of fact are essential to a complete act on the part of the jury when a special finding is requested by either party.

The purpose of a special finding (Section 2315.17, Revised Code) is to test the correctness of a general verdict in the light of that finding.

A requested finding of fact cannot be regarded as answered where the answer is signed by less than three-fourths of the jurors. *May, a Minor,* v. *Szwed,* 68 Ohio App., 459, 39 N. E. (2d), 630.

In the case of *Masters* v. *New York Central Rd. Co.,* 147 Ohio St., 293, 70 N. E. (2d), 898, the court said: "2. * * * the failure or inability of the jury to find the existence of a claimed act of negligence, in answer to interrogatories so submitted, is equivalent to a finding on such claim of negligence against the party having the burden to establish it."

In *Simpson* v. *Springer,* 143 Ohio St., 324, 55 N. E. (2d), 418, 155 A. L. R., 583, the court said in its syllabus that:

"The fact that only eight of nine jurors who concurred in and returned a general verdict for the defendant joined in an answer to a special interrogatory also submitted to the jury, did not vitiate the general verdict so returned and received by the court, no objection having been offered or request made by counsel for plaintiff that the jury be required to continue its deliberations until the interrogatory was answered by all the jurors joining in the general verdict."

And at page 327, the court said:

"The fact that one of the jurors who signed the general

verdict did not sign a negative answer to the interrogatory as to whether the defendant was negligent, did not vitiate the general verdict because there were issues other than negligence, upon which the jury was warranted in returning a verdict for the defendant. Even though such juror might have held the view that the defendant was negligent, the element of proximate cause was controverted and could furnish a basis for the concurrence of the juror in question in a verdict for the defendant. "* * *

"In this case, after the verdict and answer to the interrogatory were received by the court, no objection was offered by counsel for plaintiffs, and no request was made that the jury be required to continue its deliberations until the interrogatory was answered by all the jurors joining in the general verdict. Under such circumstances, the most that can be claimed is that there was a failure to answer the interrogatory. See, *Creighton* v. *Kiehl,* 60 Ohio App., 86, 19 N. E. (2d), 653, where a somewhat similar situation arose."

The Wisconsin rule referred to in the above case has been affirmed by later pronouncements of that court, for, in the case of *McCauley* v. *International Trading Co.,* 268 Wis., 62, at p. 70, 66 N. W. (2d), 633, that court said:

"To have a valid verdict the same 10 jurors must concur in the answers to all questions which are necessary to support a judgment; otherwise the verdict is defective."

See also: *Stylow* v. *Milwaukee Elec. Ry. & Trans. Co.,* 241 Wis., 211, 5 N. W. (2d), 750; *Biersach* v. *Wechselberg,* 206 Wis., 113, 238 N. W., 905.

In one other jurisdiction, the court, in a case similar to that herein (*Bullock* v. *Yakima Valley Transp. Co.,* 108 Wash., 413, 184 P., 641, and 187 P., 410), held that an instruction by the trial judge that any ten of the jurors might answer any one of the interrogatories submitted to the jury, was correct, in view of the statute which permitted a verdict signed by the foreman when ten members of the jury agreed.

Except for the Ohio, Wisconsin and Washington cases, we have not been able to discover any other authorities wherein the subject herein is discussed.

We do recognize that the jury is a body, a unit, and not

separate individuals, but our statute requires the jurors who agree, to not only sign the verdict but also the special interrogatories submitted to such jury. Our statute permits a jury to be polled at the request of counsel for either party, and by such manner indicate their separate and individual affirmation that the verdict is concurred in by each separate juror so signing the verdict.

The fact that we permit a verdict to be approved by less than a unanimous vote is an indication that we recognize the separate individuality of each juror, for a vote by nine members is the report of the jury but not of all twelve members.

When a juror, therefore, votes "No" or refuses to vote "Yes" to an interrogatory involving the question of negligence of the defendant in an action such as that before us (where the only liability claimed against the depot company, or which could be claimed against such company, is based upon the negligence of the depot company), it is difficult to conceive how the juror can then sign a general verdict for the plaintiff in that negligence action. There are no other issues involved in this case that would justify a verdict for the plaintiff.

It was necessary that the jury agree on the question of negligence. This they did when eleven agreed on that interrogatory. It was also necessary that nine members agree on the general verdict. This was done by eight jurors who found the depot company guilty of negligence in the case, and one juror who, in effect, found that the depot company was not guilty of negligence.

We can only conjecture as to why the three jurors who found negligence refused to sign the general verdict. Maybe it was their finding that the negligence was not the proximate cause of the injury; maybe it was their finding that the verdict was too large or too small; or they may have had other reasons. The fact remains that the vote of one juror on the negligence interrogatory cannot be reconciled with her vote on the general verdict, and, without such vote on the general verdict, there is no verdict; for it would then be incomplete, since it would bear only eight signatures.

We determine, therefore, in the instant case, that, in order to make a completed verdict for the plaintiff, Plaster, where the

only basis for his recovery was the negligence of the depot company, at least nine of the same jurors who agreed to the interrogatory finding the depot company guilty of negligence would have had to agree to the general verdict for Mr. Plaster.

In such a situation as is here present, the requisite number of jurors must agree upon all questions necessary to sustain the judgment; and, when there is no such agreement, the trial court should again send the jury to the jury room to deliberate further for the purpose of having such jury return a proper and consistent verdict.

We find that the verdict herein was defective and legally insufficient. The trial court, in accepting such verdict and thereafter awarding a judgment thereon, committed error prejudicial to the substantial rights of the depot company.

The judgment herein is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment reversed and cause remanded.*

STEVENS, P. J., and DOYLE, J., concur.