Leeman L. **PHIPPS** and **Carolyn Sue Phipps**, Appellants,

v.

Thomas J. **WINKLER**, Appellee.

Court of Appeals of Kentucky.

May 16, 1986.

Rehearing Denied July 18, 1986.

Discretionary Review Denied by
Supreme Court Oct. 7, 1986.

Kenneth Boggs, Barbourville, for appellants.

Robert L. Milby, James A. Ridings, London, for appellee.

Before HAYES, C.J., and HOWERTON and McDONALD, JJ.

McDONALD, Judge:

The appellants, Leeman L. Phipps and Carolyn Sue Phipps, have appealed from a jury verdict in their favor on liability but which, in their view, awarded an inadequate amount of damages.

Leeman Phipps was involved in a collision which clearly was caused by Thomas Winkler, the appellee. The accident arose when the appellee came upon stopped vehicles in his lane of travel. As he described the situation, he had three choices: 1) go to the righthand side of the road where there was a very deep ditch; 2) strike a vehicle in the rear with children in it; or 3) cut to the left into opposing traffic, which he did. In so doing he struck Leeman Phipps, traveling in the opposite direction. Although never conceded, the jury had no problem assessing the liability against the appellee. It is undisputed and was conceded at oral argument that the use of alcohol had nothing whatever to do with the causation of the collision nor with any aspects of Leeman Phipps's injuries.

The jury awarded the following to the Phippses: Leeman Phipps was awarded $2,000 for pain and suffering, $8,600 for medical expenses (a total of $17,197.75 proven), $2,400 for lost wages and nothing for permanent impairment to earn money. Carolyn Sue Phipps was awarded $2,000 for her loss of consortium.

The Phippses contend the low verdict award resulted from the trial court's ruling, over objection, which allowed portions of Leeman's medical records to be admitted into evidence. There is no question that the Phippses agreed that the medical

records librarian of Pineville Community Hospital could authenticate the records by affidavit as opposed to personal appearance before the court. However, the Phippses disagree that they waived their right to object to the admissibility of certain portions of such records. This conflict arose prior to trial when counsel for the appellee secured a signed authorization to obtain appellant Leeman Phipps's medical records from the hospital.

The appellee asserts the agreement was not limited to securing the medical records but was one for admitting the entire record into evidence. The testimonial colloquy before the court about this is thus:

MR. RIDINGS [counsel for appellee]: In lieu of taking that deposition, Mr. Boggs and I did agree that the medical records librarian would be allowed to simply certify in her usual fashion that the records are authentic and do appear of record, and she has done so.

We are also here to introduce them into the record and my understanding of the agreement was that they would be introduced into the record.

Mr. Boggs, counsel for the appellants, stated:

There's no agreement between counsel for the plaintiff and counsel for the defendant regarding the admissibility of those documents.... Subsequent to that pretrial conference, there was a conversation between Mr. Ridings and myself wherein my understanding of the agreement was that it would not be necessary to have the medical records librarian to appear in person for the giving of her deposition for the purpose of securing the documents from the files at the Pineville Community Hospital. I reserve any objections that I had to the admissibility of them.

We note that the written release for the records made no mention of the alleged agreement between counsel. Appellants' counsel argued it would be foolish for him to agree on the evidential admissibility of 196 pages of medical records when he had not seen them or reviewed their contents.

This argument did not persuade the trial court.

Appellants' objections were overruled and the records were admitted with this colloquy:

THE COURT: Well, it seems that maybe both of you agree—that between the two attorneys that you agreed that this medical records keeper might could certify these to the Court and file them. There would be no reason to have them certified or have them here unless they were going to be used for some purpose. Of course, it's the plaintiff's position that they couldn't be used because they have no opportunity to cross-examine anybody that made them or anything, but if you agree to do that, why, what did you all expect them to be used for? You agreed to dispense with the taking of the deposition of the records keeper. What was the purpose of her certifying them, if they couldn't be used? If they couldn't be used for one purpose, they can't be used for any other purpose.

The court's ruling resulted in Leeman Phipps's past history of alcoholism being brought before the jury through the medical records. The trial court's ruling (outside the hearing of the jury) is reflected in the trial record as follows:

MR. RIDINGS: We are talking now, Judge, about the medical records from the Pineville Hospital.

THE COURT: I'm a little bit leery about that alcoholism that you've got shown on page 4, 13, 33, and 34, dated 1976, 75–76.

MR. MILBY [co-counsel for appellee]: Judge, our reasons for that is for impeachment purposes. He testified that he had quit drinking at that time.

THE COURT: Well, you've got the latest dates there, it was almost four years from the latest date to the date of the accident, which I don't believe he gave any specific time when he quit.

MR. MILBY: Yes, sir, in his deposition.

MR. RIDINGS: We want to read a couple of pages.

MR. BOGGS: 73, 74, somewhere in there.

THE COURT: 1973, 74, somewhere along there.... Well, for that purpose it might be admissible, but it would have to be just for purposes of affecting the credibility of him.

MR. MILBY: That's all.

In essence, the appellee successfully argued that because Leeman Phipps testified on pretrial deposition that he quit drinking in 1973 or 1974, and, further, because the medical records showed he was treated for alcoholism in 1976, the evidence was admissible to attack his credibility as a witness.

■ It is our holding that such evidence was inadmissible and highly prejudicial, requiring that the case be remanded. A simple agreement to relieve a medical records librarian from attending court to "polly parrot" what is contained in the medical records cannot be automatically translated as an agreement to admit evidence which would otherwise be inadmissible under the circumstances. Whether the records librarian certified the record or appeared in person to testify, objections over the admissibility of portions of the records are always available to a party unless a clear waiver is set forth. The intent of the procedure employed is to keep hospital personnel in the hospital, especially records librarians whose testimony is perfunctory in that they cannot interpret or explain the notations in the records. The obtaining of the records herein did not follow the procedure addressed in KRS 422.300 *et seq.*

■ Next, since alcohol use was not an issue in any way in this case, Leeman Phipps's testimony by pretrial deposition that he quit drinking in 1973 or 1974 is an answer to a collateral matter and not subject to attack by cross-examination. It is the prevailing view that an answer, such as here, is not subject to impeachment of a collateral matter by contradiction. *Baker Pool Company v. Bennett*, Ky., 411 S.W.2d 335 (1967), gives us the established law of Kentucky concerning cross-examination of a collateral matter. We conclude that the collateral matter herein (alcoholism) falls within the scope of this established authority. *See also* 3 J. Weinstein and M. Berger, *Weinstein's Evidence* § 607:05 (1985); *McCormick on Evidence 2nd Ed.*, § 47 (1972); R. Lawson, *The Kentucky Evidence Law Handbook*, § 4:00(A) (1984); and cases cited in 22 Kentucky Digest 2d, *Witnesses* § 270(1) (1985).

■ Lastly, the trial judge was very reluctant for the jury to hear about the alcoholism, and the record is absent of any probative value of such evidence. We are persuaded that the trial court made a mistake during the heat of trial and, under the circumstances, the mistake was a reversible error. We see a direct correlation between it (the prejudicial testimony about alcoholism) and an award by the jury which is grossly inadequate for the factual circumstances of clear liability. If the same verdict was rendered without the inadmissible evidence, appellants would have to live with it. *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984), gives us a hint as to our highest court's thinking on the subject, although that case dealt with an excessive as opposed to an inadequate verdict. The trial court is not to be reversed unless there is an abuse of discretion. It is presumptively correct in its rulings. However, when we, on appeal, are faced with an obviously low award, coupled with the admission of inadmissible and highly prejudicial evidence which could taint a jury's thinking, we have no problem in saying that the presumption in favor of the trial court is overcome and the abuse of discretion is well-founded. We reiterate, it is clear that the intrusion of the inadmissible evidence in the instant case of the appellant's past alcoholism unduly influenced and prejudicially swayed the jury.

It is our decision that the appellants are entitled to a new trial on damages only under the authority of *Deutsch v. Shein*, Ky., 597 S.W.2d 141 (1980).

Appellants' issue about the medical records showing a prior knee injury was

properly admitted in evidence and gives us no concern.

All concur.