Karen Rae MITCHELL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 88–SC–316–MR.

Supreme Court of Kentucky.

Oct. 19, 1989.

Rehearing Denied Jan. 18, 1990.

J. Landon Overfield and S. Dianne Blanford, West, Gibbs, Overfield & Blanford, Henderson, for appellant.

Frederic J. Cowan, Atty. Gen., and Gregory C. Fuchs, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Mitchell of the murder of her nine-month-old daughter. She was sentenced to twenty years in prison. She relied on the defense of insanity and was found guilty but mentally ill.

The principal issue presented here is whether the trial judge improperly refused to allow defense counsel to comment on the result of a guilty but mentally ill verdict.

Mitchell gave birth to a baby girl on March 9, 1987. Although originally very happy and excited over the birth of the child, Mitchell became increasingly depressed over the following months. Believing she was failing as a mother and suffering from post partem depression, Mitchell became more troubled and told others of thoughts of suicide and fear that she could harm the baby she loved. She was treated by various physicians and stayed for a short time in a hospital. She suffered from anorexia and insomnia as well as severe depression. In October she attempted to strangle the baby with a cord, and shortly thereafter the district court ordered that she not be left alone with the child. In December of 1987, she threw the child in a lake. When the baby cried, she retrieved her from the water, suffocated the child and threw her back into the lake. She voluntarily informed the police that she may have murdered her daughter. At trial her defense was insanity, but the jury found her guilty of murder but mentally ill pursuant to K.R.S. 504.120.

Mitchell argues that the trial judge improperly refused to allow comment by defense counsel on the result of a guilty but mentally ill verdict. She argues that the jurors are totally confused as to what the consequences of their actions in returning a particular verdict will actually be. She contends that the legislature in 1982 enacted the guilty but mentally ill provision in response to a public outcry against a perceived misuse of the insanity defense. She claims that well meaning jurors do not want to bear the public stigma of having turned loose a child killer even though they may believe that such an individual should be relieved of criminal responsibility and receive psychiatric treatment. She argues that the jurors believe this can be accomplished by the middle ground of guilty but mentally ill verdict. Mitchell asserts that such is not the case.

*Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981) clearly and unambiguously stated that the principal function of the jury is to determine guilt or innocence. The constitutional right to a trial by jury is limited to that determination. The consideration of future consequences such as treatment, civil commitment, probation, shock probation and parole have no place in the jury's finding of fact and may serve to distort it.

*Payne, supra,* held that neither the prosecutor, defense counsel or the court may make any comment about the consequences of a particular verdict at any time during a criminal trial. Earlier, *Edwards v. Commonwealth,* Ky., 554 S.W.2d 380, 383 (1977) held that external considerations

have no legitimate bearing on the jury's factual determination of guilt or innocence.

The enactment of K.R.S. 504.120 presents no reason to change the rule enunciated in *Payne* for cases involving the insanity defense. The trial judge did not commit any error in refusing to allow defense counsel to comment on the result of a guilty but mentally ill verdict.

As noted in *Payne*, the denial of jury instructions on the consequences of an acquittal by reason of insanity does not prohibit both prosecuting and defense counsel during closing argument to comment on the consequences of the verdict.

Mitchell also presents fourteen other assignments of error. Upon careful consideration of each claim of error, we find them to be without merit.

The argument that the trial judge improperly admitted photographs and a videotape of the body of the baby is nonprejudicial. *Harper v. Commonwealth*, Ky., 694 S.W.2d 665 (1985); *Napier v. Commonwealth*, Ky., 426 S.W.2d 121 (1968).

In view of the overwhelming evidence against the defendant, the testimony by the pathologist was harmless.

The trial judge correctly overruled a motion for a directed verdict on the charge of attempted murder. Mitchell was not entitled to a directed verdict of acquittal in regard to the murder charge. There was no variance between the bill of particulars and the proof as to the suffocation of the child presented at trial.

■ The trial judge did not err in refusing to allow into evidence the case record and notes of the social worker. There was no abuse of discretion.

■ The trial judge did not abuse his discretion in refusing to permit the expert witness for the defense to testify from portions of a learned treatise. In addition the trial judge was within his discretion in admonishing the same expert with respect to the manner of answering questions.

■ The trial judge did not err in allowing Dr. Silva to present rebuttal testimony for the prosecution. Mitchell opened the door by her own expert witness and cannot close it based on alleged privilege. *Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985). We believe that the psychiatric expert for the prosecution gave proper testimony and his medical opinions were both properly expressed and permissibly admitted into evidence. The trial court did not err in denying a motion for a directed verdict of acquittal at the close of all the evidence.

Finally, the trial judge properly instructed the jury pursuant to K.R.S. 504.120. There was no evidence that Mitchell was incompetent to be sentenced. The fact that she may have been mentally ill at the time of the offense is not the same question as that of competency to be sentenced.

The judgment of conviction is affirmed.

STEPHENS, C.J., and COMBS, J., concur.

GANT, J., concurs in result only.

VANCE, J., files a separate concurring opinion.

LEIBSON, J., files a separate dissenting opinion in which LAMBERT, J., joins.

VANCE, Justice, concurring.

I concur with the result of this case, but it should be noted that today we have released our decision in *Young v. J.B. Hunt Transportation, Inc.*, Ky., 781 S.W.2d 503 (1989) in which we reached exactly the opposite result. The only apparent distinction is that *Young* is a civil case, and this is a criminal case.

In my opinion, in both civil and criminal cases the jury's fact finding responsibility is the same. The facts should be determined from the evidence, and the law should be applied to the facts as they are found to be. In neither case should the fact finding be result-oriented; that is the jury should not first determine what result it would like and then find the facts so as to reach that result.

It seems to me that the issue is one of principle and that the principle is the same in both cases. If we are going to deny a

right to attorneys to comment to a jury about the consequences of its verdict here, we should likewise deny it in *Young v. J.B. Hunt Transportation, Inc., supra.*

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The consequences of a Guilty But Mentally Ill (GBMI) verdict, and the difference between it and Not Guilty By Reason of Insanity (NGRI), should be explained to the jury because they are technical, statutory terms that would not comport with a juror's common understanding of the consequences that follow from such verdicts. They should be explained within the judge's instructions, with the lawyers then permitted to comment so long as the comments are within the context of the instructions. We cannot expect the jury to render a "true verdict" if they are misled or confused about the meaning and effect of the words they must use to express the verdict.

The court that now rejects explanation of these two terms is the same court that embraced truth-in-sentencing by comity in *Commonwealth v. Reneer,* Ky., 734 S.W.2d 794 (1987), essentially rejecting the argument that the policy of this Court, as expressed in *Payne v. Commonwealth,* Ky., 623 S.W.2d 867 (1981), is to refuse comment or explanation on the consequences of a verdict. We now permit evidence and comment, much of which is inherently speculative, about potential parole, estimated date of expiration of sentence, defendant's probation or parole status, etc., none of which was admissible under the holding in *Payne.*

In *Payne,* we reasoned:

"The consideration of future consequences such as treatment, civil commitment, probation, shock probation, and parole have no place in the jury's finding of fact and may serve to distort it." 623 S.W.2d at 870.

*Reneer, supra,* and its offspring, *Huff v. Commonwealth,* Ky., 763 S.W.2d 106 (1989), have rejected the rationale in *Payne* with far less reason to do so than exists in present circumstances.

In point of fact, this case differs from *Payne* even if we restrict consideration of additional explanation about "consequences" to the insanity verdict, because in 1982 the General Assembly changed the playing field by introducing this new, technical version of guilty, Guilty But Mentally Ill, into the guilty or not guilty equation. This verdict differs from verdicts of "guilty" or "not guilty," terms the jury can readily understand without further explanation.

I have no doubt but that many jurors think that finding the defendant Guilty But Mentally Ill means that the defendant will be committed to a mental institution for treatment, instead of prison, thinking they have found the defendant guilty because of mental illness. Few, if any, will realize that the "but mentally ill" finding is, for all practical purposes, empty of legal consequences, that the "court shall sentence a defendant found guilty but mentally ill to the local jail or the Corrections Cabinet in the same manner as a defendant found guilty." KRS 504.150. The only arguable difference is that during incarceration treatment will be provided if needed and if available. This is really a distinction without a difference because other statutes providing care for the mentally ill cover the same territory.

Likewise, because there is no explanation, no doubt some jurors think a finding of Not Guilty By Reason of Insanity carries with it indefinite commitment to a mental institution, not realizing the defendant will be set free at once if he is not presently so acutely ill as to require involuntary commitment.

The movement throughout the country for GBMI statutes was in response to the public outcry that followed when John W. Hinckley, Jr. was found not guilty by reason of insanity of the attempted assassination of President Reagan. *See Guilty But Mentally Ill: Broadening the Scope of Criminal Responsibility,* 44 Ohio St.L.J. 797 (1983). Of course, the *Hinckley* acquittal followed from the federal rule then in place burdening the prosecution with the almost impossible task of proving a nega-

tive, that the defendant was *not* insane. This illogical version of the insanity defense was never applied in Kentucky. Our statute, KRS 504.120, places the burden squarely on the defendant, where it belongs, to prove his insanity. The bizarre result in the *Hinckley* case has always been only a remote possibility in Kentucky, and the Guilty But Mentally Ill statute was at best an unnecessary overreaction. But, since we have this statute, albeit essentially meaningless and inherently confusing, the least we can do is to provide the triers of fact an explanation so they can understand what it means.

This case involves a woman who was suffering from serious mental illness when she killed her child. While the question whether she was so deranged at the precise moment of the act that she cannot be held legally responsible may be in doubt, the evidence of severe mental illness was uncontroverted. There is a strong probability that the jury would have found NGRI rather than GBMI, had they been instructed on the meaning of their verdict.

In sum, there is *every* reason to change the rule in *Payne.* Since *Payne* the General Assembly has changed the law in two areas. GBMI is one area. The other is Truth–In–Sentencing.

Justice Vance has written a Concurring Opinion complaining that in a case which is to be rendered the same day as this one, *Young v. J.B. Hunt Transportation, Inc.,* Ky., —— S.W.2d —— (1989), "we reached exactly the opposite result." Although I concur in *Young* and disagree here, thus presumably achieving a consistency otherwise lacking, to be fair to the writers of both Opinions, and to the court, I hasten to acknowledge that the two cases are *not* the same. *Young v. J.B. Hunt Transportation, Inc.* permits appropriate comment on the complexities of a comparative negligence instruction. Unlike the present situation, no additional information from the court is needed to present the issue. Lawyers have always been permitted to comment on the court's instructions so long as their comments are within, and consistent with, those instructions. The problem in

this case was the instructions were insufficient to place the issue before the jury for comment.

In this case the appellant's counsel first objected to the court's instruction on Guilty But Mentally Ill and then, after the instruction authorizing the verdict was given over objection, was prevented from comment on the consequences of such a verdict. Unlike the comparative negligence situation, the argument the defendant wanted to make did not relate to any instruction given by the court.

Arguably, there is a problem in this scenario as to whether the error was preserved by adequate objection. But, if not, the combination of circumstances presents a case of "manifest injustice" that should be addressed under RCr 10.26.

I would reverse and remand for a new trial consistent with the views in this Dissenting Opinion.

LAMBERT, J., joins this dissent.