James M. YOUNG, Appellant,

v.

J.B. HUNT TRANSPORTATION, INC.
and Robert L. Charles, Appellees.

No. 88–SC–694–DG.

Supreme Court of Kentucky.

Oct. 19, 1989.

Stephen K. Dallas, Willie Mathis, Jr., Mathis, Dallas & Frohlich, Florence, for appellant.

Lee W. Rowland, George B. Hocker, Clark, Ward & Hopgood, Lexington, Don Ruberg, O'Hara, Ruberg & Taylor, Covington, for appellees.

E. André Busald, Busald, Funk, Zevely, P.S.C., Florence, for amicus curiae.

LAMBERT, Justice.

This Court granted discretionary review to consider three significant questions of law relating to civil trial practice in Kentucky. Upon each question presented, the Court of Appeals reversed the trial court. As the issues raised arose out of different phases of the trial and do not depend upon common facts, each will be addressed separately herein.

## I.

The first issue before the Court is whether the verdict of the jury was defective for failure of at least nine of the same jurors to concur as to each of the eight "special interrogatories" submitted.

At the conclusion of a lengthy trial arising out of a motor vehicle accident, the court gave comparative negligence instructions. The jury was required to make findings as to whether each driver failed to comply with his duties, the percentage of fault attributable to each, and the total sums of money required to compensate plaintiff. Both drivers were found to have been negligent, fault was apportioned 44% to appellant (plaintiff at trial) and 56% to appellees (defendants at trial), and appellant's total damages were found to be in excess of $932,000. Allowing appellant 56% of the damages found, judgment was entered in his favor for a sum slightly in excess of $522,000.

Appellees timely objected to receipt of the verdict on the grounds that an insufficient number of the same jurors concurred as to the various special interrogatories submitted to the panel. Of the eight special interrogatories submitted, only five of the twelve jurors concurred as to each. As to the three special interrogatories which determined liability (i.e. appellant's negligence, appellees' negligence, and apportionment), only six of the same jurors concurred. However, as to each of the eight special interrogatories, three of which determined liability and five of which determined damages, at least nine jurors concurred. The trial court overruled appellees' objection, accepted the verdict and entered judgment.

Appellees appealed to the Court of Appeals from the judgment of the trial court. Relying on *Baxter v. Tankersley*, Ky., 416 S.W.2d 737 (1967), the Court of Appeals held there was not a concurrence in the verdict by the required number of jurors and reversed. It said:

> In neither case (*Baxter* nor the case at bar) did the same nine jurors sign both the liability and damage instructions and both are therefore void. There was simply no consensus by any nine jurors.

Parenthetically, the Court observed "if the rule is to be changed, it must be by the Supreme Court."

Prior to reaching the merits of this issue, we take note of appellant's contention that appellees failed to present this question in their prehearing statement filed in the Court of Appeals, and his argument that the Court of Appeals erred in considering and reversing an issue not properly before it. Without undertaking an exhaustive review of the authorities, we observe that CR 73.02(2) vests considerable discretion in appellate courts to determine the appropriate manner to deal with procedural error and that deciding cases on the merits is a primary objective of appellate procedure. See *Crossley v. Anheuser–Busch, Inc.*, Ky., 747 S.W.2d 600 (1988), and *Ready v. Jamison*, Ky., 705 S.W.2d 479 (1986). Discerning no unfair prejudice to appellant by the Court of Appeals' consideration of this issue and with due regard for that Court's exercise of its sound discretion, we decline to disturb its decision to reach the issue on the merits.

Since rendition of our decision in *Baxter v. Tankersley, supra,* this court has abandoned contributory negligence as a complete bar to recovery and adopted in its place certain provisions of the Uniform Comparative Fault Act. We have directed submission of special interrogatories to the jury to ascertain its precise findings as to total damages due plaintiff without regard to his fault, and the percentage of total fault attributable to plaintiff and defendant. *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). The use of special interrogatories has been encouraged in negligence cases involving multiple parties. *Covington v. Friend Tractor and Motor Company, Inc.*, Ky.App., 547 S.W.2d 771 (1977). Under present law, the decision-making required of a jury (eight separate findings in this case) is considerably more complex than it was under former law. No longer may the jury simply determine that plaintiff was contributorily negligent and thereby render a verdict. No longer may the

jury simply make one or two findings in which it finds the defendant negligent and awards plaintiff a sum of money not to exceed the amount shown in evidence or demanded in the complaint. We now require specific findings on a number of issues and this necessarily leads to greater opportunity for disagreement among members of the jury. If we require agreement of the same nine persons on each of numerous disputed questions of fact, we invite a greater number of mistried cases.

In addition to a greater possibility of mistrial, if we retain the rule in *Baxter,* it would be necessary to give the jury more explicit instructions. In the future, if only nine jurors agreed as to liability, it would be necessary to instruct the three who did not agree that they could not participate in the determination of damages. Since it would be improper to permit persons with no right to participate in a decision to remain with the jury during deliberations, those jurors who did not join in the liability verdict would be required to depart the jury room. Such a rule would be subject to attack, however, as being in violation of KRS 29A.280 which requires twelve jurors for all trials in circuit court. To attempt by instructions to fine-tune the deliberations of the jury would necessarily result in confusion, coercion of reluctant jurors and permit strong-willed jurors to exercise undue influence upon the proceedings. *Ward v. Weekes,* 107 N.J.Super. 351, 258 A.2d 379 (1969).

Upon careful consideration of this issue and despite our reluctance to overrule prior case law (*see Corbin Motor Lodge v. Combs,* Ky., 740 S.W.2d 944 (1987)), we believe a better approach is to treat each special interrogatory submitted to the jury as a separate verdict which may be reached by any nine or more members of the panel. Our examination of Section 248 of the Kentucky Constitution and KRS 29A.280(3) reveals nothing which prohibits such an approach. These provisions refer only to "a verdict" but do not state or imply that only one verdict may be rendered in a particular case.

The view that submission of special interrogatories results in separate verdicts on each issue submitted was accepted in *Schabe v. Hampton Bays Union Free School District,* 103 A.D.2d 418, 480 N.Y. S.2d 328 (1984), wherein the Court discussed the issue as follows:

> The total focus of a general verdict is the outcome of the case, but the focus of a special verdict is the resolution of specific factual questions.
>
> While a general verdict is the 'merger into a single indivisible residuum of all matters, however numerous, whether of law or fact' and is 'incapable of being broken up into its constituent parts,' a special verdict is separated into distinct parts, each of which can be treated as a separate and distinct issue. The Courts have thus been free to set aside unsound portions of special verdicts while saving others. (Citations omitted).

*Id.* 480 N.Y.S.2d at 334.

In his *Kentucky Instructions to Juries,* former Justice John S. Palmore criticized this Court's decision in *Baxter* as follows:

> Though only nine of the jurors have determined liability, it does not seem to this writer that there is good reason why the other three should not be able to participate in assessing damages. In fact, if they cannot, then the issue of damages can hardly be said to have been submitted to a 12–man jury. On this basis, the soundness of Baxter v. Tankersley (supra, n. 5) may be open to question. The holdings that the same jurors must concur in the answers to all questions necessary to support a judgment apparently are based on the premise that there is but one "verdict." See Clark v. Strain, Or., 319 P2d 940 (1958), and McCauley v. International Trading Co., 268 Wis. 62, 66 N.W.2d 633, 638 (1954). Actually, however, there is a separate verdict on each separate issue.

2 J. Palmore, *Kentucky Instructions to Juries,* § 13.20 at 30 n. 243 (2d ed.1989).

Upon review of this question, it does not seem unreasonable or illogical to permit individual members of the jury to conclude that as each special interrogatory is ad-

dressed and answered by nine or more, a binding verdict is reached as to that issue. When the next issue is approached, a juror in the minority on previous issues should be permitted to conclude that he is entitled to participate in deciding the question then before the jury not only with regard to his view of the evidence, but also in light of the previously rendered and binding verdict. Such a juror may logically believe that since his position did not prevail on previous issues, he has a duty to decide the issue then before him without regard to the position he took previously; that he is bound only by the view which prevailed.

This Court fully recognizes that the position we announce herein is subject to a different view and that a number of courts have so held. *Klanseck v. Anderson Sales & Service, Inc.*, 136 Mich.App. 75, 356 N.W.2d 275, 279 (1984); *Ferguson v. Northern States Power Co.*, 307 Minn. 26, 239 N.W.2d 190 (1976); *Plaster v. Akron Union Passenger Depot Co.*, 101 Oh.App. 27, 137 N.E.2d 624 (1955); *Munger v. SIAC*, 243 Or. 419, 414 P.2d 328 (1966); *McCauley v. Charter Oak Fire Ins. Co.*, 660 S.W.2d 863 (Tex.1983); and *Krueger v. Winters*, 37 Wis.2d 204, 155 N.W.2d 1 (1967). It is our belief, however, that in the vast majority of cases, a better verdict will be reached when the entire jury is allowed to participate on all issues. Certainly a thorough consideration of the evidence is more likely if dissenting views as well as concurring views are considered, and the ability of jurors disposed to minimize or exaggerate damages will be diminished.

Accordingly, we hold that the requirement of "agreement of at least three-fourths (¾) of the jurors" contained in KRS 29A.280 is satisfied by the agreement of any nine jurors on any issue separately submitted to the panel. Upon this issue, we reverse the Court of Appeals.

## II.

▪ The next issue before us is whether it was error to allow appellant's counsel to inform the jury of the effect of apportionment of liability.

During summation and after appellee's objection had been made and overruled, appellant's counsel stated as follows:

> Now, as I said, ladies and gentlemen, if you put 90% in there for the Defendant and say 10% of this accident was caused by the Plaintiff, what happens is 10% of his award would be taken from him. He would be deprived of that, because of that answer.

On appeal, the Court of Appeals held it was error to allow counsel to explain the significance of apportionment and reversed the trial court. The Court went on to discuss whether counsel's statement was prejudicial and concluded that it was. Inasmuch as we believe the trial court decided this issue correctly, we need not address that portion of the Court of Appeals opinion relating to prejudice.

The parties agree and there is no doubt that in Kentucky we observe a "bare bones" approach to jury instructions. To provide the detail which would otherwise be missing, we have held that "[t]his skeleton may then be fleshed out by counsel on closing argument." *Rogers v. Kasdan*, Ky., 612 S.W.2d 133, 136 (1981). *See also Cox v. Cooper*, Ky., 510 S.W.2d 530 (1974), and *Wemyss v. Coleman*, Ky., 729 S.W.2d 174 (1987). Descriptive of the approach we take to instructions and argument is a passage from *Collins v. Galbraith*, Ky., 494 S.W.2d 527 (1973), as follows:

> In conclusion, it may be well to mention that whenever counsel feels that jurors might draw inferences that are not warranted by the specific terminology of the instructions, his opportunity to guard against it comes in the closing argument. If instructions are to be kept concise and to the point, as they should be, their supplementation, elaboration and detailed explanation fall within the realm of advocacy. Contrary to the practice in some jurisdictions, where the trial judge comments at length to the jury on the law of the case, the traditional objective of our form of instructions is to confine the judge's function to the bare essentials and let counsel see to it that the jury clearly understands what the in-

structions mean and what they do not mean.

*Id.* at 531. From the foregoing, it is clear that in the absence of a compelling reason to do otherwise, counsel is entitled to considerable latitude during argument.

To support its holding that counsel should not have been allowed to explain the significance of apportionment of liability, the Court of Appeals relied heavily on *Robinson v. Murlin Phillips & MFA Insurance Company,* Ky., 557 S.W.2d 202 (1977), and a portion of that opinion as follows:

> In Anglo–American jurisprudence the function of the jury is to decide contested issues of fact. In order to perform this function there is no need for jurors to know the legal effect of their resolution of contested issues of fact.

*Id.* at 204. While this statement appears to support the Court of Appeals' view, when the entire *Robinson* opinion is perused, one finds that in summation, counsel actually delivered an extensive explanation as to the legal significance of the verdict. Rejecting the claim that this was error, we said:

> The second and footnote statements (of counsel) are no more than a correct statement of the principles of liability applicable to this case. Each clearly indicates that the duty of MFA to pay is predicated upon the negligence and carelessness of an uninsured motorist.

*Id.* at 205. Thus, in *Robinson,* and despite dictum to the contrary, this Court found no error in counsel's explanation of the legal effect of the jury's verdict.

Another decision of significance on this issue is *S.W. Corum Hauling, Inc. v. Tilford,* Ky., 511 S.W.2d 220 (1974), wherein an objection was made to that portion of the instructions which required a finding as to percentages of fault. We held that apportionment as authorized by KRS 454.040 had to have some rational basis, not simply dollar amounts, and that the use of percentages was proper. An objection was also made for failure of the trial court to inform the jury that the percentages fixed by them would be applied by the Court in apportionment of liability for the total damage award. In response to this argument, we said:

> We do not think the jury was required to be so informed. The instructions formulated in *Orr (Orr v. Coleman,* Ky., 455 S.W.2d 59 (1970)), did not so inform the jury. We believe it is reasonable to consider that jurors, as ordinary intelligent people, would understand that the percentages of causation fixed by them would be determinative of apportionment of damage liability.

*Id.* at 223–224.

Thus, in *Corum,* our determination of no error in the instructions was not because we thought the jury should be kept in the dark about the significance of apportionment, but because we assumed the jury understood it. *Corum* may be read to virtually authorize informing the jury of the significance of the apportionment of liability between or among joint tortfeasers.

In summary, we recognize the existence of valid arguments in favor of the decision of the Court of Appeals. Among the best of these is that denial of an explanation of apportionment prevents the jury from tailoring its factual determination to achieve a particular result. On the other hand, if one assumes that a jury will disregard the instructions of the court to achieve a result, it is not unreasonable to suspect that in the absence of information as to the legal effect of the verdict, such a jury would not hesitate to speculate as to the meaning of its factual determinations.

The best way to safeguard litigants' rights to a fair verdict is to allow counsel to inform the jury of the legal effect of apportionment of liability and argue the significance of such determination in the context of the overall result. In so doing, counsel will not have to wonder what the jury knows or suspects and will be able to fully and accurately argue the case upon the evidence presented and confront the jury with the instructions of the court.

On this issue, we reverse the Court of Appeals.

### III.

The final issue we must decide is whether the trial court properly excluded from evidence certain of appellant's hospital records and whether the Court of Appeals erred in reversing the judgment on this basis.

A central issue in the trial of this case was the nature and extent of the injuries sustained by appellant in the accident. Appellees contended that all or a substantial part of appellant's injuries arose out of a prior automobile accident. Appellant denied that the prior accident was the cause of his injuries.

At the conclusion of testimony, but before the close of their evidence, appellees proffered certain properly certified (KRS 422.300) records from appellant's hospitalizations as a result of the prior accident. Upon objection, the trial court held that the records should be excluded.

The basis for the trial court's ruling was that, despite the presence in court of the doctor who had treated appellant on the earlier occasions, appellees had not sought to introduce the hospital records through him, but had waited until the end of testimony and attempted to "pile stuff into the record." The trial court also expressed concern at not having been informed as to the contents of the records and that the records contained undeleted references to insurance. While the trial court's comments in denying admission of the records were brief, the Court clearly believed it would be improper to accept a large volume of hospital records without there having been any witness comment upon or explanation of the records to the jury.

■ In its opinion reversing the trial court, the Court of Appeals took the position that mere compliance with KRS 422.-300 was sufficient to require admission of the prior hospital records. We believe this view is too expansive. This statute is merely a convenient device for authenticating medical records. It does not assure their admissibility or abrogate other rules of evidence relating to the admission of documentary evidence. In *Commonwealth v. Willis*, Ky., 719 S.W.2d 440, 441 (1986),

this Court construed KRS 422.020(4), a similar statute relating to public records, as "a device providing the method for authentication of an official record which is otherwise admissible" and such a construction is appropriate here. *See Phipps v. Winkler*, Ky.App., 715 S.W.2d 893 (1986), and R. Lawson, *The Kentucky Evidence Law Handbook*, § 7.05 (2d ed. Supp.1989).

■ Having determined that the trial court was not required by KRS 422.300 to admit the hospital records, we must decide whether refusal of the evidence was error, and if it was, whether reversal by the Court of Appeals was justified. *See K–B Trucking Co. v. Riss Intern. Corp.*, 763 F.2d 1148 (10th Cir.1985). In R. Lawson, *The Kentucky Evidence Law Handbook*, *supra*, in § 2.00, various circumstances are described in which *relevant* evidence, contrary to the general rule, may be excluded by the trial court. Such circumstances allow exclusion of relevant evidence if its probative worth is outweighed by the threat of undue prejudice to the opposing party or if its probative worth is outweighed by the threat that its introduction will unduly confuse the issues. Likewise, the Federal Rules of Evidence, Rule 403, allow exclusion of relevant evidence on these and other grounds as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In the case at bar, if appellant's voluminous prior hospital records had been admitted in mass and without the prior treating physician or any physician available to explain the records, counsel would have been free to draw whatever conclusions they wished without fear of evidentiary contradiction. In the heat of trial, there is probability that distortion, confusion or misunderstanding would have resulted. The trial court recognized this and expressed his view as to the proper time for introducing the records as follows:

THE COURT: It looks to me like Doctor Shearer was the admitting doctor on all those admissions. I think that is right. I wouldn't swear to it, but I think that is right.

DEFENSE COUNSEL: Doctor Shearer wasn't even examined about those.

THE COURT: I know, that is what amazes me. I think that was the perfect opportunity to ask him about them and to introduce them. I don't know why it wasn't done.

In addition, as the evidence in chief for both parties was concluded at the time the prior hospital records were offered, the trial court was in a position to know whether additional evidence concerning appellant's prior injuries would be cumulative. Our examination of the record reveals extensive testimony as to appellant's prior injuries and presumably, the trial court was well aware of this.

In final analysis, we believe the decision to admit or reject the prior hospital records at the time of their proffer was discretionary with the trial court and find nothing amounting to an abuse of that discretion.

Further, in view of the evidence heard by the jury, there is no substantial basis for a belief that the outcome of the trial would have been any different if the excluded evidence has been admitted. The evidence as to whether appellant's injuries were sustained in the accident subject to litigation or the prior accident was well developed and properly presented to the jury. It is not reasonable to believe the excluded medical records would have changed the result. CR 61.01.

Accordingly, the Court of Appeals erred in reversing the trial court.

## CONCLUSION

Having fully considered the issues presented and having reversed the Court of Appeals on each, the judgment of the trial court is reinstated.

STEPHENS, C.J., and COMBS, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents by separate opinion in which GANT, J., joins.

VANCE, Justice, dissenting.

I dissent from that part of the majority opinion which holds that an attorney, in his argument to the jury, may explain the effect of the verdict insofar as it may allocate a percentage of fault to a party.

For the jury system to maintain its integrity it must be required to find facts objectively. A jury should not be permitted, or encouraged, to reach a result oriented verdict by reason of sympathy or prejudice and thus make its findings of fact to support that result. The end result should be determined by the facts which are found to exist. The fact finding should not be based upon finding facts which will justify a result.

A jury's apportionment of fault in its verdict should be based solely upon its determination from the evidence of the percentage of fault that should be attributed to the parties respectively. There can be no purpose whatever in arguing to the jury that a plaintiff's recovery will be reduced by the percentage of fault allocated to him except to play upon the sympathy of the jury and encourage it to allocate less fault to the plaintiff than is warranted by the evidence. Nor could there by any legitimate purpose in multiparty litigation in permitting comment upon the consequence of the verdict to the effect that Defendant "A" is solvent and Defendant "B" is insolvent, and therefore the allocation of any substantial degree of fault to Defendant "B" will have the effect of reducing the plaintiff's recovery.

A defense lawyer might just as well argue to the jury that the allocation of fault to the defendant increases the remedy against the defendant and would therefore increase the insurance rates of the juror.

All such arguments are intended for one purpose only, that is to encourage the jury to do something through sympathy or prejudice that it would not do based solely upon the evidence. This is simply an effort to destroy the integrity of the jury, which this court should not condone.

**510**

Furthermore, in *Mitchell v. Commonwealth*, Ky., 781 S.W.2d 510 (1989), rendered today, we have reached exactly the opposite conclusion. We held there that an attorney in a criminal case cannot comment to the jury upon the consequence of its verdict. In doing so we followed the precedent, established in *Payne v. Commonwealth*, Ky., 623 S.W.2d 867 (1981), and *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977), that consideration of the future consequences of a verdict has no legitimate place in a jury's finding of fact.

Of course, it could be said that the rule is simply different in criminal cases than in civil cases, but that is no adequate answer. Neither is it sufficient to say that a tort case is more complex. In both civil and criminal cases, the jury must determine the facts. In a tort case such as this it is only necessary for a jury to determine the amount of the plaintiff's damage and the relative degree of fault of the parties. In making these determinations, the question of the consequences of the determination is irrelevant.

In a criminal case the jury must determine the fact of guilt or innocence. Whether or not the jury agrees with the legislative determination as to the sentence to be imposed upon a finding of guilt should not be considered in the determination of guilt or innocence.

This court should not, in my opinion, hand down on the same day two opinions, one of which allows an attorney to comment to the jury about the consequences of its verdict, and the other which prohibits such comment. It is a matter of principle.

GANT, J., joins in this dissent.